**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

|  |  |
|---|---|
| **VYRONE A. FINNEY** | ) |
| 586 Mineola Avenue | ) |
| Akron, Ohio 44320 | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| **AKRON CITY SCHOOL DISTRICT** | ) |
| **BOARD OF EDUCATION** | ) |
| c/o Treasurer and Board President | ) |
| 10 North Main Street | ) |
| Akron, Ohio 44308 | ) |
|  | ) |
| **BRUCE D. ALEXANDER** | ) |
| Board Member | ) |
| Official and Individual Capacities | ) |
| Akron City School District | ) |
| 10 North Main Street | ) |
| Akron, Ohio 44308 | ) |
|  | ) |
| **N.J. AKBAR** | ) |
| Board Member | ) |
| Official and Individual Capacities | ) |
| Akron City School District | ) |
| 10 North Main Street | ) |
| Akron, Ohio 44308 | ) |
|  | ) |
| **DIANA C. AUTRY** | ) |
| Board Member | ) |
| Official and Individual Capacities | ) |
| Akron City School District | ) |
| 10 North Main Street | ) |
| Akron, Ohio 44308 | ) |

CASE NO. 5:23-cv-1998

JUDGE

**GINGER BAYLOR**                                )
Board Member                                     )
Official and Individual Capacities               )
Akron City School District                       )
10 North Main Street                             )
Akron, Ohio 44308                                )
                                                 )
**PATRICK BRAVO**                                )
Board Member                                     )
Official and Individual Capacities               )
Akron City School District                       )
10 North Main Street                             )
Akron, Ohio 44308                                )
                                                 )
**DERRICK P. HALL**                              )
Board Member                                     )
Official and Individual Capacities               )
Akron City School District                       )
10 North Main Street                             )
Akron, Ohio 44308                                )
                                                 )
**CARLA L. JACKSON**                             )
Board Member                                     )
Official and Individual Capacities               )
Akron City School District                       )
10 North Main Street                             )
Akron, Ohio 44308                                )
                                                 )
**MORGAN LASHER**                                )
Board Member                                     )
Official and Individual Capacities               )
Akron City School District                       )
10 North Main Street                             )
Akron, Ohio 44308                                )
                                                 )
**LISA MANSFIELD**                               )
Board Member                                     )
Official and Individual Capacities               )
Akron City School District                       )
10 North Main Street                             )
Akron, Ohio 44308                                )
                                                 )
                                                 )
                                                 )
                                                 )
                                                 )

2

**VALERIE J. MCKITRICK** )
Board Member )
Official and Individual Capacities )
Akron City School District )
10 North Main Street )
Akron, Ohio 44308 )
 )
**TIM MILLER** )
Board Member )
Official and Individual Capacities )
Akron City School District )
10 North Main Street )
Akron, Ohio 44308 )
 )
**RENE T. MOLENAUR** )
Board Member )
Official and Individual Capacities )
Akron City School District )
10 North Main Street )
Akron, Ohio 44308 )
 )
**JOB E. PERRY** )
Board Member )
Official and Individual Capacities )
Akron City School District )
10 North Main Street )
Akron, Ohio 44308 )
 )
**CURTIS T. WALKER, SR.** )
Board Member )
Official and Individual Capacities )
Akron City School District )
10 North Main Street )
Akron, Ohio 44308 )
 )
**DAVID JAMES** )
Superintendent )
Official and Individual Capacities )
Akron City School District )
10 North Main Street )
Akron, Ohio 44308 )
 )
 )
 )
 )
 )

3

**CHRISTINE FOWLER-MACK**    )
Superintendent          )
Official and Individual Capacities   )
Akron City School District     )
10 North Main Street      )
Akron, Ohio 44308       )
              )
**MARY OUTLEY**       )
Superintendent          )
Official and Individual Capacities   )
Akron City School District     )
10 North Main Street      )
Akron, Ohio 44308       )
              )
**ELLEN MCWILLIAMS-WOODS**   )
Assistant Superintendent     )
Official and Individual Capacities   )
Akron City School District     )
10 North Main Street      )
Akron, Ohio 44308       )
              )
**MARK BLACK**       )
Executive Director of Secondary Education )
Official and Individual Capacities   )
Akron City School District     )
10 North Main Street      )
Akron, Ohio 44308       )
              )
**KATHLEEN MCVEY**     )
Executive Director of Human Resources  )
Official and Individual Capacities   )
Akron City School District     )
10 North Main Street      )
Akron, Ohio 44308       )
              )
**TOD WAMMES**       )
Labor Relations Manager     )
Official and Individual Capacities   )
Akron City School District     )
10 North Main Street      )
Akron, Ohio 44308       )
              )
              )
              )
              )
              )

4

**TAMMY BRADY**                                    )
Executive Director of Special Education            )
Official and Individual Capacities                 )
Akron City School District                         )
10 North Main Street                               )
Akron, Ohio 44308                                  )
                                                   )
**DAN RAMBLER**                                    )
Director of Student Support Services               )
Official and Individual Capacities                 )
Akron City School District                         )
10 North Main Street                               )
Akron, Ohio 44308                                  )
                                                   )
**JOSHUA ALLEN**                                   )
Coordinator of Student Services                    )
Official and Individual Capacities                 )
Akron City School District                         )
10 North Main Street                               )
Akron, Ohio 44308                                  )
                                                   )
**DREW CAMPBELL**                                  )
Police-in-School Officer                           )
Official and Individual Capacities                 )
Akron City School District                         )
10 North Main Street                               )
Akron, Ohio 44308                                  )
                                                   )
**MARCUS MUSTER**                                  )
Police-in-School Officer                           )
Official and Individual Capacities                 )
Akron City School District                         )
10 North Main Street                               )
Akron, Ohio 44308                                  )
                                                   )
**DOUG SANDOR**                                    )
Police-in-School Officer                           )
Official and Individual Capacities                 )
Akron City School District                         )
10 North Main Street                               )
Akron, Ohio 44308                                  )
                                                   )
                                                   )
                                                   )
                                                   )
                                                   )

5

**RYAN PENDLETON**                )
Treasurer                         )
Official and Individual Capacities )
Akron City School District        )
10 North Main Street              )
Akron, Ohio 44308                 )
                                  )
**TODD M. ADKINS**               )
Treasurer                         )
Official and Individual Capacities )
Akron City School District        )
10 North Main Street              )
Akron, Ohio 44308                 )
                                  )
**DIANA M. FEITL**               )
Roetzel & Andress, L.P.A.         )
1375 East Ninth Street            )
10th Floor                        )
One Cleveland Center              )
Cleveland, Ohio 44114             )
                                  )
            Defendants.           )
                                  )
    Serve Also:                   )
    Ohio Attorney General David Yost )
    Constitutional Offices Section )
    Section Chief Julie M. Pfeiffer )
    30 East Broad Street          )
    14th Floor                    )
    Columbus, Ohio 43215

## COMPLAINT WITH JURY DEMANDED HEREIN

Pursuant to Fed.R.Civ.P. 8 and applicable rules, Plaintiff Principal Vyrone A. Finney

("Principal Finney") alleges the following against Defendants Akron City School District Board

of Education ("Board"), Bruce D. Alexander ("Alexander"), N.J. Akbar ("Akbar"), Diana C. Autry

("Autry"), Ginger Baylor ("Baylor"), Patrick Bravo ("Bravo"), Derrick P. Hall ("Hall"), Carla L.

Jackson ("Jackson"), Morgan Lasher ("Lasher"), Lisa Mansfield ("Mansfield"), Valerie J.

McKitrick ("McKitrick"), Tim Miller ("Miller"), Rene T. Molenaur ("Molenaur"), Job E. Perry

("Perry"), Curtis T. Walker, Sr. ("Walker"), David James ("James"), Christine Fowler-Mack

6

("Fowler-Mack"), Mary Outley ("Outley"), Todd M. Adkins ("Adkins"), Joshua Allen ("Allen"), Mark Black ("Black"), Tammy Brady ("Brady"), Ellen McWilliams-Woods ("McWilliams-Woods"), Kathleen McVey ("McVey"), Ryan Pendleton ("Pendleton"), Dan Rambler ("Rambler"), Tod Wammes ("Wammes"), Drew Campbell ("Campbell"), Marcus Muster ("Muster"), Doug Sandor ("Sandor"), and Diana M. Feitl ("Feitl") (collectively, "Defendants"):

## INTRODUCTION

1. Principal Finney asserts the following 42 U.S.C. 1983, 1985, 1986, and 1988 federal law claims against Defendants, joint and severally, for violating the following laws: the First Amendment to the United States Constitution ("First Amendment") (Count One), Fourth Amendment to the United States Constitution ("Fourth Amendment") (Count Two), Procedural Due Process Clause of the Fourteenth Amendment to the United States Constitution ("Procedural Due Process Clause") (Count Three), and Substantive Due Process Clause of the Fourteen Amendment to the United States Constitution ("Substantive Due Process Clause") (Count Four).

2. While jurisdiction over the 42 U.S.C. 2000e federal and R.C. 4112.02(A) state racial/color discrimination (Count Five) and 29 U.S.C. 623 federal and R.C. 4112.02(A) state age discrimination claims (Count Six) claims may not be timely, Principal Finney has filed a complaint of discrimination with the Equal Employment Opportunity Commission ("EEOC") in EEOC Case No. 532-2024-00059 and has requested a right-to-sue letter from the EEOC. As a result, Principal Finney will seek leave to amend the instant complaint to include the right-to-sue letter and has identified these as "reserved" claims below.

3. Principal Finney asserts the following state law claims against Defendants, joint and severally: retaliation (Count Seven), breach of employment contract (Count Eight);

wrongful suspension without pay (Count Nine), wrongful termination/discharge (Count Ten); abuse of process (Count Eleven); Ohio Open Meetings Act violations (Count Twelve); Ohio Constitution, Article I, Section 5 (Count Thirteen), wrongful disclosure of confidential and personal information (Count Fourteen), public disclosure of private facts (Count Fifteen), false light (Count Sixteen), defamation (Count Seventeen), intentional infliction of emotional distress (Count Eighteen), and general negligence (Count Nineteen).

4.    Principal Finney reincorporates by reference the allegations set forth below as if fully rewritten herein.

### STATEMENT OF THE PARTIES

5.    Principal Finney reincorporates by reference the allegations set forth above and below as if fully rewritten herein.

6.    At all relevant times, Principal Finney was and remains a person and citizen of the United States of America who resides at 586 Mineloa Avenue, Akron, Ohio 44320, which is in the Northern District of Ohio, Eastern Division.

7.    At all relevant times, the Akron City School District is a political subdivision organized under R.C. 3311.01, R.C. 3311.02, R.C. 3311.055, and applicable laws.

8.    At all relevant times, the Board was and remains an entity with the capacity to sue and be sued in its common name under R.C. 3311.05, R.C. 3313.17, R.C. 3313.20, and applicable laws in the Northern District of Ohio, Eastern Division.

9.    As Ohio has more than one judicial district, the Board resides in the Northern District of Ohio, Eastern Division.

10.   The Board's principal place of business is located at 10 North Main Street, Akron, Ohio 44308.

### Board Members

11.　At all relevant times, Alexander was a member of the Board and engaged in inappropriate conduct directed toward Principal Finney in both Alexander's official and individual capacities.

12.　At all relevant times, Akbar was a member of the Board and engaged in inappropriate conduct directed toward Principal Finney in both Akbar's official and individual capacities.

13.　At all relevant times, Autry was a member of the Board and engaged in inappropriate conduct directed toward Principal Finney in both Autry's official and individual capacities.

14.　At all relevant times, Baylor was a member of the Board and engaged in inappropriate conduct directed toward Principal Finney in both Baylor's official and individual capacities.

15.　At all relevant times, Bravo was a member of the Board and engaged in inappropriate conduct directed toward Principal Finney in both Bravo's official and individual capacities.

16.　At all relevant times, Hall was a member of the Board and engaged in inappropriate conduct directed toward Principal Finney in both Hall's official and individual capacities.

17.　At all relevant times, Jackson was a member of the Board and engaged in inappropriate conduct directed toward Principal Finney in both Jackson's official and individual capacities.

18.　At all relevant times, Lasher was a member of the Board and engaged in inappropriate conduct directed toward Principal Finney in both Lasher's official and individual capacities.

19. At all relevant times, Mansfield was a member of the Board and engaged in inappropriate conduct directed toward Principal Finney in both Mansfield's official and individual capacities.

20. At all relevant times, McKitrick was a member of the Board and engaged in inappropriate conduct directed toward Principal Finney in both McKitrick's official and individual capacities.

21. At all relevant times, Miller was a member of the Board and engaged in inappropriate conduct directed toward Principal Finney in both Miller's official and individual capacities.

22. At all relevant times, Molenaur was a member of the Board and engaged in inappropriate conduct directed toward Principal Finney in both Molenaur's official and individual capacities.

23. At all relevant times, Perry was a member of the Board and engaged in inappropriate conduct directed toward Principal Finney in both Perry's official and individual capacities.

24. At all relevant times, Walker was a member of the Board and engaged in inappropriate conduct directed toward Principal Finney in both Walker's official and individual capacities.

## **Superintendent**

25. At all relevant times, James was the Superintendent of the Akron City School District and engaged in inappropriate conduct directed toward Principal Finney in both James's official and individual capacities.

26. At all relevant times, Fowler-Mack was the Superintendent of the Akron City School District and engaged in inappropriate conduct directed toward Principal Finney in both Fowler-Mack's official and individual capacities.

27.     At all relevant times, Outley was the Superintendent of the Akron City School District and engaged in inappropriate conduct directed toward Principal Finney in both Outley's official and individual capacities.

### Administrators

28.     At all relevant times, Adkins was the Treasurer of the Akron City School District and engaged in inappropriate conduct directed toward Principal Finney in both Adkins's official and individual capacities.

29.     At all relevant times, Allen was the Coordinator of Student Services of the Akron City School District and engaged in inappropriate conduct directed toward Principal Finney in both Allen's official and individual capacities.

30.     At all relevant times, Black was the Executive Director of Secondary Education of the Akron City School District and engaged in inappropriate conduct directed toward Principal Finney in both Black's official and individual capacities.

31.     At all relevant times, Brady was the Executive Director of Special Education of the Akron City School District and engaged in inappropriate conduct directed toward Principal Finney in both Brady's official and individual capacities.

32.     At all relevant times, McWilliams-Woods was the Assistant Superintendent of the Akron City School District and engaged in inappropriate conduct directed toward Principal Finney in both McWilliams-Woods's official and individual capacities.

33.     At all relevant times, McVey was the Executive Director of Human Resources of the Akron City School District and engaged in inappropriate conduct directed toward Principal Finney in both McVey's official and individual capacities.

34.   At all relevant times, Pendleton was the Treasurer of the Akron City School District and engaged in inappropriate conduct directed toward Principal Finney in both Pendleton's official and individual capacities.

35.   At all relevant times, Rambler was the Director of Student Support and Services and engaged in inappropriate conduct directed toward Principal Finney in both Rambler's official and individual capacities.

36.   At all relevant times, Wammes was the Labor Relations Manager of the Akron City School District and engaged in inappropriate conduct directed toward Principal Finney in both Wammes's official and individual capacities.

## **Police-in-School Officers**

37.   At all relevant times, Campbell was a police-in-school officer of the Akron City School District and engaged in inappropriate conduct directed toward Principal Finney in both Campbell's official and individual capacities.

38.   At all relevant times, Muster was a police-in-school officer of the Akron City School District and engaged in inappropriate conduct directed toward Principal Finney in both Muster's official and individual capacities.

39.   At all relevant times, Sandor was a police-in-school officer of the Akron City School District and engaged in inappropriate conduct directed toward Principal Finney in both Sandor's official and individual capacities.

## **General Counsel and Investigator**

40.   At all relevant times, Feitl was appointed and compensated by the Board as general counsel and conducted the investigation against Principal Finney on behalf of the Board.

41.    Feitl's testimony is "'enmeshed in the factual and legal issues comprising the cause[s] of action" set forth herein. *Kahle v. Oppenheimer & Co.*, 748 F.2d 337, 339 (6th Cir.1984).

## STATEMENT OF JURISDICTION, VENUE, AND SERVICE

42.    Principal Finney reincorporates by reference the allegations set forth above and below as if fully rewritten herein.

43.    Defendants are subject to the jurisdiction and venue of this Honorable Court.

44.    Jurisdiction is invoked pursuant to 28 U.S.C. 1331 and 1343, as well as applicable laws, as one or more of the claims arise "under the Constitution, law, or treaties of the United State."

45.    Supplemental jurisdiction is invoked pursuant to 28 U.S.C. 1367, as well as applicable laws, as the state law claims are so related to the claims within which this Honorable Court has original jurisdiction "that they form part of the same case or controversy under Article II of the United States Constitution."

46.    Jurisdiction is not affected by the subpoena appeal pending before the Ohio Ninth District Court of Appeals in the case of *Finney v. Akron City School Dist. Bd. of Edn.*, 9th District Summit No. CA-30493 because, pursuant to R.C. 3319.16, only the judge of the court of common pleas in which person who fails to comply with a subpoena resides has jurisdiction.

47.    Jurisdiction is not affected by the administrative appeal pending before the Summit County Court of Common Pleas in the case of *Finney v. Akron City School Dist. Bd. of Edn.*, Summit C.P. No. CV-2023-08-3267 (Judge Jennifer D. Towell) because, pursuant to R.C. 3319.16, only the court of common pleas of the county in which the Board is located has jurisdiction to hear the administrative appeal.

48.  To the extent either the subpoena appeal or administrative appeal are removable to this Honorable Court, the Defendants may seek removal of the same pursuant to 28 U.S.C. 1441 and applicable laws.

49.  Venue is conferred under 28 U.S.C. 1391(a)-(c), as well as applicable laws, as Defendants reside within the Northern District of Ohio, Eastern Division.

50.  All Defendants may be served with summons and process under Fed.R.Civ.P. 5(b)(2)(B)(i) and Fed.R.Civ.P. 5(b)(2)(C) and applicable laws, by mailing a copy to the person's office and last known address, both of which are Akron City School District, 10 North Main Street, Akron, Ohio 44308, with the exception of Feitl, whose office and last known address is Roetzel & Andress, L.P.A., 1275 East Ninth Street, 10th Floor, One Cleveland Center, Cleveland, Ohio 44114.Contemporaneous with the filing of the instant complaint, a *Notice of a Lawsuit and Request to Waive Service of a Summons* for each defendant was served upon legal counsel for Defendants — *i.e.,* Attorneys Alejandro V. Cortes and Hailee Kepchar with the law firm Roetzel & Andress, L.P.A., 1375 East Ninth Street, 10th Floor, One Cleveland Center, Cleveland, Ohio 44114.

51.  Contemporaneous with the filing of the instant complaint, a *Notice of Constitutional Question* and a copy of the instant complaint was served upon Ohio Attorney General David Yost, Constitutional Offices Section, Section Chief Julie M. Pfeiffer, 30 East Broad Street, 14th Floor, Columbus, Ohio 43215.

### STATEMENT OF THE FACTS

52.  Principal Finney reincorporates by reference the allegations set forth above and below as if fully rewritten herein.

53.     Principal Finney asserts federal and state law claims against Defendants, joint and severally, and the facts underlying each of these claims are averred herein.

## General Background

54.     Principal Finney is a black man.

55.     Principal Finney is a practicing Christian and minister.

56.     Principal Finney is a registered Republican and vocal civil rights activist.

57.     Principal Finney is over 40 years of age.

58.     Principal Finney is a good man.

59.     Principal Finney is always there for the students, giving them haircuts when needed and providing them with coats and school supplies.

60.     Principal Finney started a foundation to provide essential items to kids in need.

61.     Principal Finney is a shining product of the Akron Public Schools and graduated from John R. Buchtel High School in 1990.

62.     Principal Finney then went on to graduate from Alabama State University with a bachelor's degree before returning to Akron to earn Principal Finney's master's degree in administration.

## Employment History

63.     Principal Finney was employed by the Board as a teacher from the 1998-1999 through the 2003-2004 school years pursuant to R.C. 3319.07 and R.C. 3319.08 without any negative evaluations, discipline, action plans, recommendations for additional training, and/or nonrenewals by the Board.

64.     Principal Finney was employed by the Board as an administrator pursuant to R.C. 3319.02 from the 2004-2005 through the 2022-2023 school years without any negative evaluations,

discipline, action plans, recommendations for additional training, and/or nonrenewals by the Board.

65. Principal Finney and the Board signed an employment contract, a true and accurate copy of which is attached hereto and incorporated herein at **Exhibit A**.

66. Principal Finney fully performed under the employment contract.

67. The Board failed to fully perform under the employment contract.

68. Principal Finney had a property interest in Principal Finney's administrator position and accompanying benefits pursuant to R.C. 3319.16.

69. On November 18, 2019, the Board suspended Principal Finney without pay due to Defendants' false allegations regarding a September 19, 2019 incident involving Principal Finney.

70. On November 18, 2019, the Board declared the Board's intention to terminate the employment contract of Principal Finney due to Defendants' false allegations regarding a September 19, 2019 incident involving Principal Finney.

71. The Board replaced Principal Finney with a white male.

72. On or about December 4, 2019, the Board provided Principal Finney with written notice that the Board terminated Principal Finney's health care coverage due to "[e]nd of employment" pursuant to 29 U.S.C. 1163(2) and applicable laws.

73. On July 24, 2023, the Board terminated the employment contract of Principal Finney based on the insufficient report and recommendation of Referee Robert M. Lustig ("Lustig") following Principal Finney's R.C. 3319.16 termination hearings due to Defendants' false allegations regarding a September 19, 2019 incident involving Principal Finney.

74.  The Board terminated the employment contract of Principal Finney despite never providing Principal Finney with notice and opportunity to be heard.

75.  The Board terminated the employment contract of Principal Finney despite the evidence presented in the R.C. 3319.16 termination hearing proving that good and just grounds did not exist to terminate the employment contract of Principal Finney.

76.  The Board terminated the employment contract of Principal Finney despite Lustiq failing to find what grounds existed to terminate the employment contract of Principal Finney as required by R.C. 3319.16.

77.  The Board terminated the employment contract of Principal Finney despite Defendants failing to provide Principal Finney with progressive discipline.

78.  While Defendants referenced an incident from January 28, 2008, Defendants admitted that this incident was neither disciplinary nor relevant to the termination proceedings and, as a matter of law, Principal Finney is presumed to be innocent of such allegations — especially since such allegations were specifically found to be unsubstantiated.

79.  Despite the September 19, 2019 incident, the Board did not nonrenew the two-year R.C. 3319.02 administrator employment contract when it expired at the end of the 2019-2020 school year, so Principal Finney's employment contract was renewed for 2020-2021 and 2021-2022 school years pursuant to R.C. 3319.02(D).

80.  Despite the September 19, 2019 incident, the Board did not nonrenew the two-year R.C. 3319.02 administrator employment contract when it expired at the end of the 2021-2022 school year, so Principal Finney's employment contract was renewed for 2022-2023 and 2023-2024 school years pursuant to R.C. 3319.02(D).

81.   Despite the September 19, 2019 incident and to the extent Principal Finney was only awarded one-year R.C. 3319.02 administrator employment contracts upon expiration of the two-year R.C. 3319.02 administrator employment contract for the 2018-2019 to 2019-2020 school years, the Board nonetheless never nonrenewed any such one-year contracts so Principal Finney's employment contract was renewed for the 2020-2021, 2021-2022, 2022-2023, and 2023-2024 school years pursuant to R.C. 3319.02(D).

82.   Principal Finney is a well-respected educator.

83.   On September 19, 2019, Defendants knew, or should have known, of Principal Finney's unblemished employment history with the Board.

**School-To-Prison Pipeline Complaints**

84.   During the 2018-2019 school year, Principal Finney formally complained, on numerous occasions, to the Board's Administration ("Administration") that black and disabled students were being disproportionately disciplined and arrested and such discipline created a school-to-prison pipeline effect.

85.   These school-to-prison pipeline complaints were regarding matters of public concern not made pursuant to Principal Finney's official duties.

86.   Principal Finney's speech regarding the school-to-prison pipeline complaints resulted in no injury to the Board.

87.   On September 19, 2019, Defendants knew, or should have known, of the school-to-prison complaints made by Principal Finney.

**Teacher Misconduct Complaints**

88.   During the 2018-2019 school year, Principal Finney formally complained to the Administration that Wammes was preventing Principal Finney from disciplining

approximately twenty (20) teachers for insubordination related to academic issues pursuant to the directions given to Principal Finney by Black.

89.  The complaints against Wammes were regarding matters of public concern not made pursuant to Principal Finney's official duties.

90.  Principal Finney's speech regarding the complaints against Wammes complaints resulted in no injury to the Board.

91.  On September 19, 2019, Defendants knew, or should have known, of the complaints made against Wammes by Principal Finney.

**Keith Rawling-On-Student Assault Complaints**

92.  On September 19, 2019, Keith Rawling ("Rawling") was a white male teacher assigned to Principal Finney's building.

93.  On November 18, 2009, Rawling assaulted multiple students and yet the Board never disciplined, terminated, or nonrenewed the employment contract of Rawling, nor did the Board ever report Rawling to the police, children services, or the Ohio Department of Education ("ODE") as mandated by R.C. 3319.314 or direct Rawling to undergo additional training.

94.  On February 8, 2010, Rawling again assaulted a student and yet again the Board never disciplined, terminated, or nonrenewed the employment contract of Rawling, nor did the Board ever report Rawling to the police, children services, or the ODE as mandated by R.C. 3319.314 or direct Rawling to undergo additional training.

95.  On October 26, 2010, the ODE issued a consent decree explaining that: "During the 2009-2010 school year, [Rawling] used inappropriate discipline techniques to redirect noncompliant students."

19

96. On March 11, 2011, Rawling again assaulted a student and yet again the Board never disciplined, terminated, or nonrenewed the employment contract of Rawling, nor did the Board ever report Rawling to the police, children services, or the ODE as mandated by R.C. 3319.314 services or direct Rawling to undergo additional training.

97. During the 2016-2017 school year, Principal Finney referred Rawling to the Administration for discipline for yet again assaulting a student and yet again the Board never disciplined, terminated, or nonrenewed the employment contract of Rawling, nor did the Board ever report Rawling to either police, children services, or the ODE as mandated by R.C. 3319.314 or direct Rawling to undergo additional training.

98. During the 2018-2019 school year, Principal Finney again referred Rawling to the Administration for discipline for yet again assaulting a student and yet again the Board never disciplined, terminated, or nonrenewed the employment contract of Rawling, nor did the Board ever report Rawling to the police, children services, or the ODE as mandated by R.C. 3319.314 or direct Rawling to undergo additional training.

99. Prior to the summer of 2019, there were several other instances not listed above wherein Principal Finney again referred Rawling to the Administration for discipline for assaulting students and again the Board never disciplined, terminated, or nonrenewed the employment contract of Rawling, nor did the Board ever report Rawling to the police, children services, or the ODE as mandated by R.C. 3319.314 or direct Rawling to undergo additional training.

100. In the summer of 2019, Wammes denied Principal Finney's request that Rawling be reassigned to a portion of the building with less confrontational students despite Rawling's history of assaulting students.

101.    The Rawling complaints were matters of public concern not made pursuant to Principal Finney's official duties.

102.    Principal Finney's speech regarding the Rawling complaints resulted in no injury to the Board.

103.    On September 19, 2019, Defendants knew, or should have known, that Rawling had a history of assaulting students.

### Crisis Prevention Institute Training for Student-On-Staff Assaults

104.    On September 19, 2019, the risk of students assaulting staff members was both known and real to Principal Finney and staff members in Principal Finney's building.

105.    Prior to September 19, 2019, Principal Finney's building had a reputation for students assaulting staff members, as well as other students.

106.    Prior to September 19, 2019, Secretary Vikki Derr ("Derr") was forced, on several occasion, to participate in breaking-up fights to prevent students from killing each other.

107.    To protect staff members from student-on-staff assaults, Defendants provide certain employees with Crisis Prevention Institute Training ("CPI"), which allows for the use of force on students by staff members.

108.    The Board applies CPI Training to satisfy the requirements of Ohio Admin.Code 3301-35-15.

109.    The Board applies CPI Training to satisfy the requirements of the ODE's Policy on Positive Behavior Intervention and Supports, and Restraint and Seclusion.

110.    The Board applies CPI Training to satisfy the requirements of the Board's adopted policy on Positive Behavior Intervention and Supports, and Restraint and Seclusion as set forth in Board Policy 5630.01 and applicable laws.

111. CPI requires an educator to utilize previous knowledge of a student including, but not limited to, previous assaults committed by the student in determining whether the student is a threat.

112. CPI requires an educator to take into consideration if a student has a history of assaulting staff members when deciding if that student is a danger.

113. CPI requires an educator to take into consideration the student's background on whether the student becomes violent or not after a verbal altercation before deciding to implement physical force taught in CPI training.

114. CPI requires an educator to take into consideration escalating factors including, but not limited to, whether a student recently got into a verbal altercation with a teacher and refused to leave the classroom as directed.

115. CPI trains an educator to recognize that a student standing up from a seated position is a noticeable change and can be considered a threatening action.

116. CPI trains an educator to recognize that students can escalate at a moment's notice and jump to violence without progressing step by step through a range of behaviors.

117. CPI trains an educator to recognize that the educator is not required to exhaust every de-escalation technique before engaging in physical nonviolent crisis intervention.

118. CPI trains an educator to recognize that any item including, but not limited to, a student's own body can be a weapon.

119. For those individuals who have not been trained in CPI, various CPI techniques including, but not limited to, a strike and/or block may be misinterpreted as a slap and/or hit because the hand comes up near the face of the student.

120. The use of CPI techniques is considered part of board policy and administrative guidelines are permitted by and consistent with applicable policies and administrative guidelines including, but not limited to, administrative Guideline 5630B, Board Policy 5630, and Board Policy 5630.01.

121. On September 19, 2019, Principal Finney was properly certified in CPI as provided by the Board.

## Collective Bargaining Agreement Provisions for Student-On-Staff Assaults

122. On September 19, 2019, the Akron Education Association ("AEA") collective bargaining agreement provided numerous mandates for addressing students who assault staff members.

123. Section 3.23 of the AEA collective bargaining agreement provides the following definition for verbal assault:

> Verbal assault is any threatening or abusive language directed at a member. Threatening language includes an express declaration or the implication of an intention or determination to inflict injury upon a person, upon a member of that person's family, or property.

124. When it has been determined that a verbal assault has occurred, Section 3.23 of the AEA collective bargaining agreement mandates that:

> 1. The student must be removed immediately from both the class and school,
> 2. The student must be reassigned to another building.

125. Section 3.23 of the AEA collective bargaining agreement provides the following definition for a physical assault:

> Physical assault is purposely causing or attempting to cause physical contact with a staff member with the intent or potential to harm the staff member, or interfere with the staff member's performance of duties.

126.  When it has been determined that a physical assault has occurred, Section 3.23 of the AEA

collective bargaining agreement mandates that:

1.  The student must be removed immediately from both the
class and school;
2.  The student must be reassigned to another building;
3.  The student must be recommended to expulsion;
4.  The Akron Police Department must be notified; and
5.  Teachers must cooperate with the prosecution of the student.

127.  On September 19, 2019, Defendants knew, or should have known, of the numerous

mandates for addressing students who assault staff members that are contained in the AEA

collective bargaining agreement, and Defendants' duties include enforcing this collective

bargaining agreement.

## **A.S. Complaints**

128.  A.S. was a student assigned to Principal Finney's building.

129.  Prior to September 19, 2019, A.S. assaulted one or more law enforcement officers.

130.  Prior to September 19, 2019, A.S. was arrested and detained for assaulting one or more law

enforcement officers.

131.  Prior to September 19, 2019, A.S. assaulted a staff member in Principal Finney's building

— *i.e.*, Jeffrey Dillinger ("Dillinger"), but Defendants failed to comply with the AEA

collective bargaining agreement including, but not limited to, Section 3.23, as evidenced

by the fact that A.S. was not permanently reassigned to another building.

132.  Prior to September 19, 2019, Principal Finney reported to Defendants that A.S. continued

to assault Dillinger at the building, but Defendants yet again failed to comply with the AEA

collective bargaining agreement including, but not limited to, Section 3.23, as evidenced

by the fact that A.S. was not permanently reassigned to another building and the Board

simply advised Dillinger to avoid A.S.

133.   Prior to September 19, 2019, A.S. yet again assaulted another staff member in Principal Finney's building — *i.e.*, Gabriel Gonzalez, but Defendants failed to comply with the AEA collective bargaining agreement including, but not limited to, Section 3.23, as evidenced by the fact that A.S. returned to Principal Finney's building on September 19, 2019, after having just been suspended for this assault.

134.   On September 19, 2019, Defendants knew, or should have known, that A.S. had a history of assaulting law enforcement and staff members.

**<u>September 19, 2019 Incident</u>**

135.   On the morning of September 19, 2019, A.S. was in Rawling's class on the second floor and refused to read aloud as Rawling requested.

136.   Rawling then instructed A.S. to go to the buddy room across the hall to cool off.

137.   Principal Finney received a call over the radio that A.S. refused to go to the buddy room from Rawling's class.

138.   When a student goes to the buddy room, the student can go to their next class as normal, but, if the student refuses to go to the buddy room, the student gets an automatic one day in-school suspension ("ISS").

139.   Security was called because A.S. refused to leave Rawling's classroom, but security had to radio the school's administration office as A.S. refused to leave and caused a confrontation.

140.   Principal Finney requested that security bring A.S. to Principal Finney's office on the first floor because Principal Finney knew Rawling and A.S. and security then brought A.S. to Principal Finney's office.

141.   While Principal Finney and A.S. discussed what had happened in Rawling's classroom, A.S. said, "fuck Rawling" and that he was going to fuck Rawling up.

142.   Principal Finney told A.S. that A.S. was not going back to Rawling's classroom.

143.   Principal Finney then called A.S.'s mother and explained the situation to her.

144.   The mother informed Principal Finney that the mother was having trouble with A.S. at home and that A.S. was trying to fight the mother's boyfriend, not listening to the mother, and did not like following the rules and that Principal Finney could do whatever Principal Finney needed to do including, but not limited to, suspending A.S.

145.   Principal Finney informed the mother that A.S. would be in ISS for the rest of the day.

146.   While Principal Finney had this conversation with the mother, A.S. grew agitated with both the mother and Principal Finney and was already agitated with Rawling.

147.   A.S. got vocal with the mother and started saying disrespectful things to the mother.

148.   After the call, Principal Finney radioed the ISS teacher and told the ISS teacher that A.S. was coming to the ISS teacher's classroom.

149.   The ISS students were going to lunch, so Principal Finney said they were going to meet the ISS teacher at the cafeteria on the first floor.

150.   While walking to meet the ISS teacher, A.S. mocked Principal Finney by saying Principal Finney had a tight-ass suit.

151.   When they met up with the ISS teacher, Principal Finney told the ISS teacher that A.S. would be on ISS for the rest of the day, but A.S. argued and said A.S. was only going to be there for one period.

152.   Principal Finney told the ISS teacher to let Principal Finney know if A.S. left and A.S. got in line for lunch at the cafeteria.

153. After Principal Finney returned to Principal Finney's office, Principal Finney received a call from the ISS teacher saying that A.S. left the cafeteria and was not in the ISS room on the first floor.

154. Principal Finney believed A.S. was going back upstairs to Rawling's room and informed security not to let A.S. into Rawling's room before leaving the office and going to the second floor to find A.S.

155. Security informed Principal Finney that A.S. was indeed on the second floor.

156. When Principal Finney got to the second floor, A.S. was walking towards Principal Finney swinging a red bookbag.

157. Principal Finney told A.S. that A.S. now had a three-day out-of-school suspension ("OSS"), to exit the building, and that it was time to go home.

158. The OSS was issued pursuant to school policy for refusing to go to ISS.

159. A.S. responded by saying "fuck you bitch, you are a bitch-ass nigger, I ain't going nowhere, fuck you."

160. Principal Finney reiterated that A.S. needed to leave, was suspended, and that the mother already supported a suspension.

161. A.S. walked past Principal Finney and the staircase to the first floor and proceeded to the other end of the hallway towards the library.

162. Principal Finney radioed the police asking for assistance removing an unruly student on the second floor heading towards the library.

163. A.S. heard this and turned around to go down to the first floor.

164. While going down the steps, Principal Finney told A.S. to just leave and go home, that the police were on the way, and not to make it any worse.

27

165. Once on the first floor, Principal Finney told A.S. to go out the door and go home, that A.S. was already suspended, the police were on the way, and that A.S. did not want to be arrested for disorderly conduct.

166. A.S. exclaimed "fuck the police" and, despite Principal Finney's numerous instructions, A.S. walked into the main office instead of leaving the school.

167. Two school resource officers, Muster and Campbell, responded to Principal Finney's request to remove A.S. from the school and arrived at the office at the same time as Principal Finney and A.S. and followed them into the office.

168. A.S. sat down in the chairs by the wall while Principal Finney stood back from A.S.

169. Principal Finney told A.S. that A.S. was now suspended for five days and tried to reason with A.S. to go home.

170. A.S. continuously called Principal Finney a bitch.

171. A.S. proclaimed he was not leaving, and Muster advised A.S. that A.S. needed to leave because he was trespassing, but A.S. was adamant that he was not leaving.

172. A.S. once more proclaimed, "fuck the police."

173. A.S. called Principal Finney a "pussy ass nigger."

174. Principal Finney informed A.S. that he was going to suspend A.S. for ten days if A.S. did not leave, to which A.S. responded by calling Principal Finney a bitch.

175. A.S. was getting out of control and escalated the situation.

176. A.S. was not following Principal Finney's or Muster's directives.

177. A.S. kept calling Principal Finney a "pussy ass nigger."

178. A.S. grew increasingly anxious.

179.    A.S. flinched, causing Principal Finney to belief A.S. was coming for Principal Finney, so Principal Finney took a small step to position Principal Finney in a defensive stance as CPI training dictates.

180.    A.S. stood up and called Principal Finney a bitch once more.

181.    Principal Finney believed A.S. was lunging at Principal Finney.

182.    Derr also believed that A.S. was going to do something to Principal Finney.

183.    Principal Finney believed A.S. was coming for Principal Finney, so Principal Finney swiped to block an incoming punch and restrained A.S. against the wall.

184.    Principal Finney used the CPI technique of a palm heel strike— *i.e.*, an open hand strike with the palm pursuant to official Board Policies.

185.    The strike was not hard enough to cause a loud sound and was comparable to slapping a toddler on the butt to get the toddler's attention and stop the toddler's behavior.

186.    Principal Finney grabbed A.S. by the shirt collar and restrained A.S. against the wall.

187.    Principal Finney believed that Principal Finney was defending Principal Finney from A.S. using techniques Principal Finney learned from Principal Finney's CPI training.

188.    Principal Finney did not intend to contact A.S.'s face or cause A.S. any harm.

189.    Muster and Campbell separated Principal Finney and A.S.

190.    Muster moved Principal Finney away from A.S.

191.    Campbell restrained A.S.

192.    Principal Finney backed away from A.S. and retreated to the corner.

193.    Principal Finney stated how A.S. made things worse and should have just gone home.

194.    A.S. fought against Campbell and attempted to get around the officers and get to Principal Finney.

195.  A.S. exclaimed "fuck you, I'm going to kick his ass, you a bitch-ass nigger."

196.  The officers physically contacted A.S. to restrain and escort A.S. from the building.

197.  A.S. left the building shortly afterwards.

198.  After A.S. left the building, Principal Finney was calm and joked with Muster stating, in jest, that Principal Finney was not in the mood to be called a bitch today.

199.  At no point was Principal Finney arrested by either Muster or Campbell.

200.  Sandor, who was not present for the incident, later brought charges against Principal Finney to the prosecutor.

201.  Sandor falsely claimed that A.S.'s parents filed the charges.

202.  At some point, A.S. received an abrasion on A.S.'s lip.

203.  It is unknown whether A.S. received the abrasion before the incident, while A.S. was resisting and fighting the police officers, or after the incident from someone else — *e.g.*, A.S., the mother, the mother's boyfriend, A.S.'s father, etc.

## September 19, 2019 Investigation

204.  At no relevant time on or after September 19, 2019, was Wammes ever been trained in how to conduct any investigation including, but not limited to, investigations of student-on-staff assaults and, in the alternative, Feitl led the investigation and Wammes simply acted under the direction of Feitl and rubber-stamped the reports and recommendations of Feitl.

205.  At all relevant times, Wammes had numerous conflicts-of-interest demanding that he refrain from conducting the investigation into the September 19, 2019 incident including, but not limited to, the following:

   a.    Wammes knew, or should have known, that complaints had been made against Wammes by Principal Finney prior to September 19, 2019.

30

b.    Wammes conducted the investigation without the assistance of anyone.

c.    Wammes conducted the pre-termination hearing without the assistance of anyone.

d.    Wammes unilaterally recommended that the Board initiate the termination proceedings without the assistance of anyone.

206.    The following are the only steps taken by Wammes during Wammes' investigation into the September 19, 2019 incident:

a.    On September 19, 2019, Wammes discussed what had happened with Principal Finney and obtained a written statement from Principal Finney.

b.    On September 19, 2019, Wammes discussed the incident with Muster, Campbell, and Derr and obtained written statements from each of them.

c.    On September 19, 2019, and prior to the October 24, 2019 pre-discipline hearing, Wammes only reviewed the video of the incident from Security Camera 8.

d.    On September 19, 2019, Wammes notified Principal Finney that he was being placed on paid administrative leave.

e.    On September 19, 2019, Wammes received and reviewed A.S.'s statement and redacted black and white pictures of A.S.'s lip, both of which were taken by Allen.

f.    At some point between September 19, 2019, and the October 24, 2019 pre-discipline hearing, Wammes reviewed the police report, Principal Finney's personnel file, board policies, administrative guidelines, and the Licensure Code of Professional Conduct for Ohio Educators.

g.    On September 27, 2019, Wammes reviewed the updated statements Principal Finney made.

h. October 24, 2019, Wammes met with Principal Finney at the pre-termination hearing, wherein Wammes asked Principal Finney predetermined questions from a written transcript that even concluded, in writing and prior to the pre-termination hearing, that "termination of your contract is a likely outcome."

i. After the pre-termination hearing, Wammes recommended that the Board terminate the employment contract of Principal Finney.

207. None of the following steps were taken by Wammes during Wammes' investigation into the September 19, 2019 incident:

a. Wammes did not ask Derr if A.S. did in fact ask to call the mother to verify A.S.'s story.

b. Wammes did not interview A.S.'s counselor to verify A.S.'s story.

c. Wammes never asked for nor received a copy of the CPI trainer's manual which is vastly important because the trainers bring the manual to training, trainers use it to make sure they are on point, and the trainees can view it as well.

d. Wammes did not have any conversations with Brady before recommending Principal Finney's termination.

e. Wammes did not have any conversations with Terri Porter ("Porter") before recommending Principal Finney's termination.

f. Wammes did not have conversations with anyone who was certified with CPI training (other than Principal Finney) or any certified CPI trainer prior to recommending Principal Finney's termination.

g. Wammes did not review other cameras that showed other angles of the incident.

h.      Wammes did not interview A.S. nor A.S.'s parents regarding the September 19, 2019 incident.

208.    Defendants failed to conduct a proper and unbiased investigation into the allegations against Principal Finney.

### October 24, 2019 Pre-Termination Hearing

209.    Defendants failed to provide Principal Finney with proper notice and opportunity to be heard prior to any consideration being made by the Board to consider the termination of Principal Finney's employment contract.

210.    The pre-termination hearing was conducted on October 24, 2019.

211.    The videos Defendants used in the termination hearings were not provided to Principal Finney any time prior to November 8, 2021, including, but not limited to, the October 24, 2019 pre-termination hearing and, therefore, Principal Finney was denied notice and opportunity to be heard as to these allegations.

212.    Principal Finney was denied notice and opportunity to be heard as to the allegations in the October 4, 2019 pre-termination notice as the notice actually provided to Principal Finney was redacted and only had black and white photos.

213.    The November 13, 2019 notice of consideration of termination contains allegations not provided to Principal Finney prior to November 8, 2021, including, but not limited to, the October 24, 2019 pre-termination hearing and, therefore, Principal Finney was denied notice and opportunity to be heard as to these allegations.

214.    The November 19, 2019 notice of intent to consider termination contains allegations not provided to Principal Finney prior to November 8, 2021, including, but not limited to, the

October 24, 2019 pre-termination hearing and, therefore, Principal Finney was denied notice and opportunity to be heard as to these allegations.

215.  The Crisis Prevention Institute Participant Workbook Defendants used in the R.C. 3319.16 termination hearing was not provided to Principal Finney prior to November 8, 2021, including, but not limited to, the October 24, 2019 pre-termination hearing and, therefore, Principal Finney was denied notice and opportunity to be heard as to this document.

216.  The September 19, 2019 email Defendants used in the R.C. 3319.16 termination hearing was not provided to Principal Finney prior to November 8, 2021, including, but not limited to, the October 24, 2019 pre-termination hearing and, therefore, Principal Finney was denied notice and opportunity to be heard as to this document.

217.  Without any authority or support, Wammes unilaterally made a false report to the Summit County Children Services.

218.  Wammes gathered additional information that was not provided to Principal Finney prior to November 8, 2021, including, but not limited to, the October 24, 2019 pre-termination hearing and, therefore, Principal Finney was denied notice and opportunity to be heard as to this document.

219.  Wammes provided the Board with additional information that was not provided to Principal Finney prior to November 8, 2021, including, but not limited to, the October 24, 2019 pre-termination hearing and, therefore, Principal Finney was denied notice and opportunity to be heard as to this information.

220.  Wammes provided the Board with false information that was not provided to Principal Finney prior to November 8, 2021, including, but not limited to, the October 24, 2019 pre-

termination hearing and, therefore, Principal Finney was denied notice and opportunity to be heard as to this false information.

221. Defendants denied Principal Finney's request for records.

## Board Policies

222. On September 19, 2019, the Board applied policies and administrative guidelines based upon template created by NEOLA which are posted at https://go.boarddocs.com/oh/akron/Board.nsf/Public?open&id=policies (last accessed October 13, 2023).

223. The policies and administrative guidelines of the Board distinguish between administration, professional staff, and support staff with the applicable policies for "administration" being found in the 1000 series, "professional staff" being found in the 3000 series, and "support staff" being found in the 4000 series. *See, generally,* https://go.boarddocs.com/oh/akron/Board.nsf/Public?open&id=policies (last accessed October 13, 2023).

224. On September 19, 2019, Principal Finney was an administrator and part of the "administration."

225. On September 19, 2019, Principal Finney was neither a member of the "professional staff," "support staff," nor "classified staff."

226. Board Policy 3210 only applies to "professional staff" and neither "administration" nor the "support staff" and, therefore, Board Policy 3210 does not apply to Principal Finney.

227. Administrative Guideline 3210 only applies to "professional staff" and neither "administration" nor the "support staff" and, therefore, Administrative Guideline 3210 does not apply to Principal Finney.

228.  Board Policy 3213 only applies to "professional staff" and neither "administration" nor the "support staff" and, therefore, Board Policy 3213 does not apply to Principal Finney.

229.  Administrative Guideline 3213 only applies to "professional staff" and neither "administration" nor the "support staff" and, therefore, Administrative Guideline 3213 does not apply to Principal Finney.

230.  Board Policy 5630 only applies to "professional staff" and "classified staff" and, therefore, Board Policy 5630 does not apply to Principal Finney.

231.  To the extent Board Policy 5630 somehow applies to the "administration" and Principal Finney, Board Policy 5630 nonetheless provides, in pertinent part, that:

> Professional staff as well as classified staff, within the scope of their employment, may use and apply reasonable force and restraint to quell a disturbance threatening physical injury to others, to obtain possession of weapons or other dangerous objects upon or within the control of A.S., in self-defense, or for the protection of persons or property.

232.  Administrative Guidelines 5630B applies to all "District personnel" and, therefore, Principal Finney.

233.  Administrative Guidelines 5630B provides, in pertinent part, that:

> District personnel may use reasonable physical force upon a student necessary to maintain a safe learning environment. They may also use reasonable physical force upon a student necessary to protect *** a staff member's personal safety.

234.  Board Policy 5630.01 only applies to "professional staff" and "support staff" and, therefore, Board Policy 5630.01 does not apply to Principal Finney.

235.  To the extent Board Policy 5630.01 somehow applies to the "administration" and Principal Finney, Board Policy 5630.01 nonetheless provides, in pertinent part, that:

> Professional staff members and support staff determined appropriate by the Superintendent are permitted to physically restrain and/or

36

seclude a student, but only when there is immediate risk of physical harm to A.S. and/or others, there is no other safe and effective intervention possible, and the physical restraint or seclusion is used in a manner that is age and developmentally appropriate and protects the safety of all children and adults at school.

236. While the Licensure Code of Professional Conduct for Ohio Educators applies to Principal Finney, nothing in this code prevents Principal Finney from either applying CPI techniques, using reasonable physical force upon a student necessary to maintain a safe learning environment, and/or using reasonable physical force upon a student necessary to protect Principal Finney's personal safety.

## **Defendants' Fabricated Outrage Against Principal Finney to the Public**

237. From September 19, 2019 to the present, Defendants have knowingly and intentionally engaged in an ongoing, systematic pattern of misstating facts to the public to fabricate outrage among the public, stakeholders, journalists, and the ODE with malicious purpose, in bad faith, and in a wanton and reckless manner.

238. From September 19, 2019 to the present, Defendants have knowingly and intentionally engaged in an ongoing, systematic pattern of disclosing confidential information discovered during one or more child abuse and neglect investigations to fabricate outrage among the public, stakeholders, journalists, and the ODE with malicious purpose, in bad faith, and in a wanton and reckless manner.

239. From September 19, 2019 to the present, Defendants have knowingly and intentionally engaged in an ongoing, systematic pattern of disclosing confidential child abuse and neglect disposition information to fabricate outrage among the public, stakeholders, journalists, and the ODE with malicious purpose, in bad faith, and in a wanton and reckless manner.

240. From September 19, 2019 to the present, Defendants have knowingly and intentionally engaged in an ongoing, systematic pattern of disclosing expunged and/or sealed court records to fabricate outrage among the public, stakeholders, journalists, and the ODE with malicious purpose, in bad faith, and in a wanton and reckless manner.

241. From September 19, 2019 to the present, Defendants have knowingly and intentionally engaged in an ongoing, systematic pattern of maintaining personal information in violation of Board Polices 8310, 8320, and 8320.01; Administrative Guidelines 8310A, 8310B, 8310D, and 8320; and applicable laws to fabricate outrage among the public, stakeholders, journalists, and the ODE with malicious purpose, in bad faith, and in a wanton and reckless manner.

242. From September 19, 2019 to the present, Defendants have knowingly and intentionally engaged in an ongoing, systematic pattern of maintaining personal information that the Board knows, or has reason to know, is inaccurate, irrelevant, no longer timely, and incomplete to fabricate outrage among the public, stakeholders, journalists, and the ODE with malicious purpose, in bad faith, and in a wanton and reckless manner.

243. From September 19, 2019 to the present, Defendants have knowingly and intentionally engaged in an ongoing, systematic pattern of using and disclosing personal information in a manner prohibited by law to fabricate outrage among the public, stakeholders, journalists, and the ODE with malicious purpose, in bad faith, and in a wanton and reckless manner.

244. From September 19, 2019 to the present, Defendants have knowingly and intentionally engaged in an ongoing, systematic pattern of supplying personal information for storage in, or using or disclosing personal information maintained in, a personal information system, that the Board knows, or has reason to know, is false in order to fabricate outrage

38

among the public, stakeholders, journalists, and the ODE with malicious purpose, in bad faith, and in a wanton and reckless manner.

245. From September 19, 2019 to the present, Defendants have knowingly and intentionally engaged in an ongoing, systematic pattern of denying Finney the right to inspect and dispute the personal information at a time when inspection or correction might have prevented harm to Finney to fabricate outrage among the public, stakeholders, journalists, and the ODE with malicious purpose, in bad faith, and in a wanton and reckless manner.

246. From September 19, 2019 to the present, Defendants have knowingly and intentionally engaged in an ongoing, systematic pattern of making records that are not necessary for the adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the Board to fabricate outrage among the public, stakeholders, journalists, and the ODE with malicious purpose, in bad faith, and in a wanton and reckless manner.

247. From September 19, 2019 to the present, Defendants have knowingly and intentionally engaged in an ongoing, systematic pattern of making records that are not necessary for the protection of the legal and financial rights of Finney to fabricate outrage among the public, stakeholders, journalists, and the ODE with malicious purpose, in bad faith, and in a wanton and reckless manner.

248. From September 19, 2019 to the present, Defendants have knowingly and intentionally engaged in an ongoing, systematic pattern of making false testimony to fabricate outrage among the public, stakeholders, journalists, and the ODE with malicious purpose, in bad faith, and in a wanton and reckless manner.

## COUNT ONE (FEDERAL LAW CLAIM):
## FIRST AMENDMENT
## 42 U.S.C. 1983, 1985, 1986, and 1988

249.    Principal Finney reincorporates by reference the allegations set forth above and below as if fully rewritten herein.

250.    At all relevant times, Defendants were persons.

251.    At all relevant times, Defendants were the final policymakers.

252.    At all relevant times, Defendants were acting under the color of state law.

253.    At all relevant times, Defendants were exercising powers traditionally reserved exclusively to the state.

254.    Principal Finney brings this claim against Defendants pursuant to 42 U.S.C. § 1983 for violations of the First Amendment, which protects the speech of a public employee when the public employee speaks on a matter of public concern and the public employee's interest in expressing themselves is not be outweighed by any injury the speech could cause the public employer in promoting the efficiency of the public services the public employer performs.

255.    Principal Finney also brings this claim against Defendants pursuant to 42 U.S.C. 1985 for violations of the First Amendment as Defendants engaged in a conspiracy, for the purpose of depriving, either directly or indirectly, Principal Finney of the equal protection of the laws, or of equal privileges and immunities under the laws, and acts in furtherance of this conspiracy, whereby Principal Finney was and remains injured and deprived of rights and privileges of a citizen of the United States of America.

256.    Principal Finney also brings this claim against Defendants pursuant to 42 U.S.C. 1986 for violations of the First Amendment as Defendants, having knowledge that any of the wrongs

conspired to be done and mentioned as to the 42 U.S.C. 1985, were about to be committed, and having power to prevent and/or aid in preventing the commission of the same, neglected and refused to do so.

257.  Principal Finney also brings this claim against Defendants pursuant to 42 U.S.C. 1988 for violations of 42 U.S.C. 1983, 1985, and 1986.

258.  Principal Finney is both a person and citizen of the United States of America.

259.  Principal Finney is a public employee.

260.  Principal Finney spoke on matters of public concern not pursuant to Principal Finney's official duties.

261.  Principal Finney's interest in expressing Principal Finney's concerns is not outweighed by any injury Principal Finney's speech could cause the Defendants in promoting the efficiency of the public services Defendants perform.

262.  On November 18, 2019, Defendants took adverse personnel action against Principal Finney based upon Principal Finney's speech on matters of public concern by suspending Principal Finney without pay.

263.  On November 18, 2019, Defendants took adverse personnel action against Principal Finney based upon Principal Finney's speech on matters of public concern by declaring Defendants' intention to terminate the employment contract of Principal Finney.

264.  On or about December 4, 2019, Defendants took adverse personnel action against Principal Finney based upon Principal Finney's speech on matters of public concern by terminating Principal Finney's health care coverage.

265.    On July 24, 2023 Defendants took adverse personnel action against Principal Finney based upon Principal Finney's speech on matters of public concern by terminating the employment contract of Principal Finney.

266.    Defendants' adverse personnel action based upon speech on matters of public concern resulted from the policies, customs, and practices of Defendants.

267.    Acting under color of state law, Defendants proximately caused the deprivation of Principal Finney's rights under the First Amendment.

268.    Defendants are not entitled to qualified immunity because the instant complaint states constitutional rights, which were clearly established before Defendants committed the actions.

269.    **WHEREFORE**, Principal Finney requests that this Honorable Court award Principal Finney civil damages, compensatory damages, appropriate equitable relief, punitive damages, attorney fees, expenses, and costs **in excess of One Million Dollars** and any other relief as this Honorable Court deems just and proper against Defendants, joint and severally.

### COUNT TWO (FEDERAL LAW CLAIM): FOURTH AMENDMENT PRIVACY CLAUSE 42 U.S.C. 1983, 1985, 1986, and 1988

270.    Principal Finney reincorporates by reference the allegations set forth above and below as if fully rewritten herein.

271.    At all relevant times, Defendants were persons.

272.    At all relevant times, Defendants were the final policymakers.

273.    At all relevant times, Defendants were acting under the color of state law.

274.   At all relevant times, Defendants were exercising powers traditionally reserved exclusively to the state.

275.   Principal Finney brings this claim against Defendants pursuant to 42 U.S.C. 1983 for violations of the Fourth Amendment, which protects public employees with the legitimate expectation of privacy from disclosure by public employers.

276.   Principal Finney also brings this claim against Defendants pursuant to 42 U.S.C. 1985 for violations of the Fourth Amendment as Defendants engaged in a conspiracy, for the purpose of depriving, either directly or indirectly, Principal Finney of the equal protection of the laws, or of equal privileges and immunities under the laws, and acts in furtherance of this conspiracy, whereby Principal Finney was and remains injured and deprived of rights and privileges of a citizen of the United States of America.

277.   Principal Finney also brings this claim against Defendants pursuant to 42 U.S.C. 1986 for violations of the Fourth Amendment as Defendants, having knowledge that any of the wrongs conspired to be done and mentioned as to the 42 U.S.C. 1985, were about to be committed, and having power to prevent and/or aid in preventing the commission of the same, neglected and refused to do so.

278.   Principal Finney also brings this claim against Defendants pursuant to 42 U.S.C. 1988 for violations of 42 U.S.C. 1983, 1985, and 1986.

279.   Principal Finney is both a person and citizen of the United States of America.

280.   Principal Finney is a public employee.

281.   Principal Finney has a legitimate expectation of privacy from disclosure of confidential and personal information by Defendants.

282.   Defendants have no legitimate need for the disclosure of the confidential and personal information of Principal Finney.

283.   Acting under color of state law, Defendants proximately caused the deprivation of Principal Finney's rights under the Fourth Amendment.

284.   Defendants are not entitled to qualified immunity because the instant complaint states constitutional rights, which were clearly established before Defendants committed the actions.

285.   **WHEREFORE**, Principal Finney requests that this Honorable Court award Principal Finney civil damages, compensatory damages, appropriate equitable relief, punitive damages, attorney fees, expenses, and costs **in excess of One Million Dollars** and any other relief as this Honorable Court deems just and proper against Defendants, joint and severally.

**COUNT THREE (FEDERAL LAW CLAIM):**
**FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS**
**42 U.S.C. 1983, 1985, 1986, and 1988**

286.   Principal Finney reincorporates by reference the allegations set forth above and below as if fully rewritten herein.

287.   At all relevant times, Defendants were persons.

288.   At all relevant times, Defendants were the final policymakers.

289.   At all relevant times, Defendants were acting under the color of state law.

290.   At all relevant times, Defendants were exercising powers traditionally reserved exclusively to the state.

291.  Principal Finney brings this claim against Defendants pursuant to 42 U.S.C. 1983 for violations of the Procedural Due Process Clause, which provides that "no state shall *** deprive any person of life, liberty, or property, without due process of law."

292.  Principal Finney also brings this claim against Defendants pursuant to 42 U.S.C. 1985 for violations of the Procedural Due Process Clause as Defendants engaged in a conspiracy, for the purpose of depriving, either directly or indirectly, Principal Finney of the equal protection of the laws, or of equal privileges and immunities under the laws, and acts in furtherance of this conspiracy, whereby Principal Finney was and remains injured and deprived of rights and privileges of a citizen of the United States of America.

293.  Principal Finney also brings this claim against Defendants pursuant to 42 U.S.C. 1986 for violations of the Procedural Due Process Clause as Defendants, having knowledge that any of the wrongs conspired to be done and mentioned as to the 42 U.S.C. 1985, were about to be committed, and having power to prevent and/or aid in preventing the commission of the same, neglected and refused to do so.

294.  Principal Finney also brings this claim against Defendants pursuant to 42 U.S.C. 1988 for violations of 42 U.S.C. 1983, 1985, and 1986.

295.  Principal Finney is both a person and citizen of the United States of America.

296.  Principal Finney has a property interest in his continued employment as a Principal within the Akron Public Schools pursuant to R.C. 3319.16.

297.  Principal Finney has a constitutionally protected right to public concern speech.

298.  Principal Finney has a constitutionally protected right to privacy.

299.  Principal Finney has a constitutionally protected right to reputation, honor, and integrity.

300.  Principal Finney has a constitutionally protected right to a name-clearing hearing.

301. On November 18, 2019, Defendants deprived Principal Finney of Principal Finney's constitutionally protected rights by suspending Principal Finney without pay and denied Principal Finney procedural due process by not providing Principal Finney with notice and opportunity to be heard as to the allegations asserted against Principal Finney prior to suspending Principal Finney without pay.

302. On November 18, 2019, Defendants deprived Principal Finney of constitutionally protected rights by declaring Defendants' intention to terminate the employment contract of Principal Finney and denied Principal Finney procedural due process by not providing Principal Finney with notice and opportunity to be heard as to the allegations asserted against Principal Finney prior to declaring Defendants' intention to terminate the employment contract of Principal Finney.

303. On or about December 4, 2019, Defendants deprived Principal Finney of constitutionally protected rights by terminating Principal Finney's health care coverage and denied Finney procedural due process by not providing Principal Finney with notice and opportunity to be heard as to the allegations asserted against Principal Finney prior to terminating Principal Finney's health care coverage.

304. On July 24, 2023, Defendants deprived Principal Finney of constitutionally protected rights by terminating the employment contract of Principal Finney and denied Principal Finney procedural due process by not providing Principal Finney with notice and opportunity to be heard as to the allegations asserted against Principal Finney prior to terminating the employment contract of Principal Finney.

305. Defendants' deprivation of Finney's constitutionally protected rights without procedural due process resulted from the policies, customs, and practices of the Board.

306. Acting under color of state law, Defendants proximately caused the deprivation of Principal Finney's rights under the Procedural Due Process Clause.

307. Defendants are not entitled to qualified immunity because the instant complaint states constitutional rights, which were clearly established before Defendants committed the actions.

308. **WHEREFORE**, Principal Finney requests that this Honorable Court award Principal Finney civil damages, compensatory damages, appropriate equitable relief, punitive damages, attorney fees, expenses, and costs **in excess of One Million Dollars** and any other relief as this Honorable Court deems just and proper against Defendants, joint and severally.

## COUNT FOUR (FEDERAL LAW CLAIM): FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS 42 U.S.C. 1983, 1985, 1986, and 1988

309. Principal Finney reincorporates by reference the allegations set forth above and below as if fully rewritten herein.

310. At all relevant times, Defendants were persons.

311. At all relevant times, Defendants were the final policymakers.

312. At all relevant times, Defendants were acting under the color of state law.

313. At all relevant times, Defendants were exercising powers traditionally reserved exclusively to the state.

314. Principal Finney brings this claim against Defendants pursuant to 42 U.S.C. 1983 for violations of the Substantive Due Process Clause, which provides that "no state shall *** deprive any person of life, liberty, or property, without due process of law."

315.  Principal Finney also brings this claim against Defendants pursuant to 42 U.S.C. 1985 for violations of the Substantive Due Process Clause as Defendants engaged in a conspiracy, for the purpose of depriving, either directly or indirectly, Principal Finney of the equal protection of the laws, or of equal privileges and immunities under the laws, and acts in furtherance of this conspiracy, whereby Principal Finney was and remains injured and deprived of rights and privileges of a citizen of the United States of America.

316.  Principal Finney also brings this claim against Defendants pursuant to 42 U.S.C. 1986 for violations of the Substantive Due Process Clause as Defendants, having knowledge that any of the wrongs conspired to be done and mentioned as to the 42 U.S.C. 1985, were about to be committed, and having power to prevent and/or aid in preventing the commission of the same, neglected and refused to do so.

317.  Principal Finney also brings this claim against Defendants pursuant to 42 U.S.C. 1988 for violations of 42 U.S.C. 1983, 1985, and 1986.

318.  Principal Finney is both a person and citizen of the United States of America.

319.  Principal Finney has a constitutionally protected property right in his continued employment as a Principal within the Akron Public Schools pursuant to R.C. 3319.16.

320.  Principal Finney has a constitutionally protected right to public concern speech.

321.  Principal Finney has a constitutionally protected right to privacy.

322.  Principal Finney has a constitutionally protected right to reputation, honor, and integrity.

323.  Principal Finney has a constitutionally protected right to a name-clearing hearing.

324.  On November 18, 2019, Defendants deprived Principal Finney of constitutionally protected rights and denied Principal Finney substantive due process by suspending

48

Principal Finney without pay in an arbitrary and capricious manner and without an adequate explanation.

325. On November 18, 2019, Defendants deprived Principal Finney of constitutionally protected rights and denied Principal Finney substantive due process by declaring Defendants' intention to terminate the employment contract of Principal Finney in an arbitrary and capricious manner and without an adequate explanation.

326. On or about December 4, 2019, Defendants deprived Principal Finney of constitutionally protected rights and denied Principal Finney substantive due process by terminating Principal Finney's health care coverage in an arbitrary and capricious manner and without an adequate explanation.

327. On July 24, 2023, Defendants deprived Principal Finney of constitutionally protected rights and denied Principal Finney substantive due process by terminating the employment contract of Principal Finney in an arbitrary and capricious manner and without an adequate explanation.

328. Defendants' deprivation of Principal Finney's constitutionally protected rights without substantive due process resulted from the policies, customs, and practices of Defendants.

329. Acting under color of state law, Defendants proximately caused the deprivation of Principal Finney's rights under the Substantive Due Process Clause.

330. Defendants are not entitled to qualified immunity because the instant complaint states constitutional rights, which were clearly established before Defendants committed the actions.

331. **WHEREFORE**, Principal Finney requests that this Honorable Court award Principal Finney civil damages, compensatory damages, appropriate equitable relief, punitive

damages, attorney fees, expenses, and costs **in excess of One Million Dollars** and any other relief as this Honorable Court deems just and proper against Defendants, joint and severally.

### RESERVE: COUNT FIVE (FEDERAL AND STATE LAW CLAIMS):
### 42 U.S.C. 2000e FEDERAL RACIAL/COLOR DISCRIMINATION
### R.C. 4112.02(A) STATE RACIAL/COLOR DISCRIMINATION
### 42 U.S.C. 1983, 1985, 1986, and 1988

332. Principal Finney reincorporates by reference the allegations set forth above and below as if fully rewritten herein.

333. Principal Finney brings this claim against Defendants pursuant to 42 U.S.C. 1983 for violations of 42 U.S.C. 2000e, which protects members of a racial minority from being terminated based on their race.

334. Principal Finney also brings this claim against Defendants pursuant to 42 U.S.C. 1985 for violations of 42 U.S.C. 2000e as Defendants engaged in a conspiracy, for the purpose of depriving, either directly or indirectly, Principal Finney of the equal protection of the laws, or of equal privileges and immunities under the laws, and acts in furtherance of this conspiracy, whereby Principal Finney was and remains injured and deprived of rights and privileges of a citizen of the United States of America.

335. Principal Finney also brings this claim against Defendants pursuant to 42 U.S.C. 1986 for violations of 42 U.S.C. 2000e as Defendants, having knowledge that any of the wrongs conspired to be done and mentioned as to the 42 U.S.C. 1985, were about to be committed, and having power to prevent and/or aid in preventing the commission of the same, neglected and refused to do so.

336. Principal Finney also brings this claim against Defendants pursuant to 42 U.S.C. 1988 for violations of 42 U.S.C. 1983, 1985, and 1986.

337. Principal Finney also brings this claim against Defendants pursuant to R.C. 4112.02(A), which protects members of a racial minority from being discriminated and terminated based on their race.

338. At all relevant times, Defendants were persons.

339. At all relevant times, Defendants were the final policymakers.

340. At all relevant times, Defendants were acting under the color of state law.

341. At all relevant times, Defendants were exercising powers traditionally reserved exclusively to the state.

342. Principal Finney is both a person and citizen of the United States of America.

343. Principal Finney is a member of a protected class.

344. Principal Finney was qualified for the job.

345. Principal Finney suffered numerous adverse employment actions, including, but not limited to, suspension without pay and termination.

346. Principal Finney was replaced by a person outside of Principal Finney's protected class.

347. Principal Finney was treated differently than a similarly situated non-protected employee.

348. Principal Finney has a constitutionally protected liberty right in not being discriminated against based on Principal Finney's race.

349. The Board deprived Principal Finney of constitutionally protected rights by replacing Principal Finney with a person not of Principal Finney's protected class.

350. Defendants deprived Principal Finney of constitutionally protected rights by treating Principal Finney differently than a similarly situation person not of Principal Finney's protected class.

351.   Defendants' deprivation of Principal Finney's constitutionally protected rights resulted from the policies, customs, and practices of Defendants.

352.   Acting under color of state law, Defendants proximately caused the deprivation of Principal Finney's rights.

353.   Defendants are not entitled to qualified immunity because the instant complaint states constitutional rights, which were clearly established before Defendants committed the actions.

354.   **WHEREFORE**, Principal Finney requests that this Honorable Court award Principal Finney civil damages, compensatory damages, appropriate equitable relief, punitive damages, attorney fees, expenses, and costs **in excess of One Million Dollars** and any other relief as this Honorable Court deems just and proper against Defendants, joint and severally.

**RESERVE: COUNT SIX (FEDERAL AND STATE LAW CLAIMS):**
**29 U.S.C. 623 FEDERAL AGE DISCRIMINATION**
**R.C. 4112.02(A) AGE DISCRIMINATION**
**42 U.S.C. 1983, 1985, 1986, and 1988**

355.   Principal Finney reincorporates by reference the allegations set forth above and below as if fully rewritten herein.

356.   At all relevant times, Defendants were persons.

357.   At all relevant times, Defendants were the final policymakers.

358.   At all relevant times, Defendants were acting under the color of state law.

359.   At all relevant times, Defendants were exercising powers traditionally reserved exclusively to the state.

360. Principal Finney brings this claim against Defendants pursuant to 42 U.S.C. 1983 for violations of 29 U.S.C. 623, which protects persons over 40 years of age from being terminated based on their age.

361. Principal Finney also brings this claim against Defendants pursuant to 42 U.S.C. 1985 for violations of 29 U.S.C. 623 as Defendants engaged in a conspiracy, for the purpose of depriving, either directly or indirectly, Principal Finney of the equal protection of the laws, or of equal privileges and immunities under the laws, and acts in furtherance of this conspiracy, whereby Principal Finney was and remains injured and deprived of rights and privileges of a citizen of the United States of America.

362. Principal Finney also brings this claim against Defendants pursuant to 42 U.S.C. 1986 for violations of 29 U.S.C. 623 as Defendants, having knowledge that any of the wrongs conspired to be done and mentioned as to the 42 U.S.C. 1985, were about to be committed, and having power to prevent and/or aid in preventing the commission of the same, neglected and refused to do so.

363. Principal Finney also brings this claim against Defendants pursuant to 42 U.S.C. 1988 for violations of 42 U.S.C. 1983, 1985, and 1986.

364. Principal Finney also brings this claim against Defendants pursuant to R.C. 4112.02(A), which protects members of a racial minority from being discriminated and terminated based on their age.

365. Principal Finney is both a person and citizen of the United States of America.

366. Principal Finney is a member of a protected class.

367. The Board terminated Principal Finney and replaced Principal Finney with a person not of Principal Finney's protected class.

368. Principal Finney's termination permitted the Board to retain a person not of Principal Finney's protected class.

369. Principal Finney has a constitutionally protected liberty right in not being discriminated against based on Principal Finney's age.

370. The Board deprived Principal Finney of constitutionally protected rights by replacing Principal Finney with a person not of Principal Finney's protected class.

371. The Board deprived Principal Finney of constitutionally protected rights by retaining a person not of Principal Finney's protected class.

372. Defendants' deprivation of Principal Finney's constitutionally protected rights resulted from the policies, customs, and practices of Defendants.

373. Acting under color of state law, Defendants proximately caused the deprivation of Principal Finney's rights.

374. Defendants are not entitled to qualified immunity because the instant complaint states constitutional rights, which were clearly established before Defendants committed the actions.

375. **WHEREFORE**, Principal Finney requests that this Honorable Court award Principal Finney civil damages, compensatory damages, appropriate equitable relief, punitive damages, attorney fees, expenses, and costs **in excess of One Million Dollars** and any other relief as this Honorable Court deems just and proper against Defendants, joint and severally.

### COUNT SEVEN (STATE LAW CLAIM): R.C. 41123.52(B) STATE RETALIATION

376. Principal Finney reincorporates by reference the allegations set forth above and below as if fully rewritten herein.

377. Principal Finney brings this claim against Defendants pursuant to R.C. 4113.52, which protects Principal Finney from being discharged based on Principal Finney's reports of Defendants' violation of state or federal statute, any ordinance or regulation of a political subdivision, or any work rule or company policy of the Board.

378. Principal Finney reported Defendants' violation of state or federal statute, any ordinance or regulation of a political subdivision, or any work rule or company policy of the Board.

379. Principal Finney suffered adverse employment actions, including, but not limited to, suspension without pay and termination.

380. Principal Finney suffered adverse employment actions because of Principal Finney's reports.

381. **WHEREFORE**, Principal Finney requests that this Honorable Court award Principal Finney civil damages, compensatory damages, appropriate equitable relief, punitive damages, attorney fees, expenses, and costs **in excess of One Million Dollars** and any other relief as this Honorable Court deems just and proper against Defendants, joint and severally.

### COUNT EIGHT (STATE LAW CLAIM): BREACH OF EMPLOYMENT CONTRACT

382. Principal Finney reincorporates by reference the allegations set forth above and below as if fully rewritten herein.

383. R.C. Chapter 2744 does not apply, and shall not construe to apply, to the instant cause of action as the instant cause of action (a) seeks to recover damages from the Board and its employees for contractual liability; (b) relates to matters arising out of the employment relationship between Principal Finney and Defendants; (c) relates to wages, hours, conditions, or other terms of employment; and (d) allege violations of the constitution or

statutes of the United States. Nor does R.C. 2744.02(A) shield the Board from liability as the R.C. 2744.02(B)(4) immunity exception applies since the injuries and damages to Principal Finney for caused by the negligence (at least) of the Board's employees and occurred within or on the grounds of, and is due to physical defects (*e.g.,* security devices and cameras) within or on the grounds of, buildings that are used in connection with the performance of a governmental function and the R.C. 2744.03(A)(1)-(3) and (5) immunity defenses are inapplicable as no Board employee was engaged in the performance of a judicial, quasi-judicial, prosecutorial, legislative, or quasi-legislative function; no conduct of any Board employee involved, other than negligent conduct, that gave rise to the claim of liability was required by law or authorized by law, or if the conduct of the employee involved that gave rise to the claim of liability was necessary or essential to the exercise of powers of the Board or the Board's employees; no action or failure to act by any Board employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the Board employee; and the injuries and damages to Principal Finney resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources with malicious purpose, in bad faith, or in a wanton or reckless manner. Nor does R.C. 2744.03(A)(6) shield the Board employees from liability as their acts and omissions were manifestly outside the scope of their employment or official responsibilities and/or were taken with malicious purpose, in bad faith, or in a wanton or reckless manner. In addition, civil liability is expressly imposed upon by the

Board and the Board employees by the Ohio Revised Code (R.C. 2744.02(B)(5) and R.C. 2744.03(A)(6)(c)).

384. An employment contract existed between Principal Finney and Defendants for Principal Finney's employment as a principal.

385. Principal Finney performed all duties required of Principal under the employment contract as a principal.

386. Defendants substantially breached the employment contract between Principal Finney and Defendants by failing to follow the appropriate procedures under R.C. 3319.16.

387. Principal Finney suffered damages including loss of pay, benefits, and employment.

388. The actions of Defendants were the cause in fact and proximate cause of Principal Finney's damages.

389. **WHEREFORE**, Principal Finney requests that this Honorable Court award Principal Finney civil damages, compensatory damages, appropriate equitable relief, punitive damages, attorney fees, expenses, and costs **in excess of One Million Dollars** and any other relief as this Honorable Court deems just and proper against Defendants, joint and severally.

### COUNT NINE (STATE LAW CLAIM): WRONGFUL SUSPENSION WITHOUT PAY

390. Principal Finney reincorporates by reference the allegations set forth above and below as if fully rewritten herein.

391. R.C. Chapter 2744 does not apply, and shall not construe to apply, to the instant cause of action as the instant cause of action (a) seeks to recover damages from the Board and its employees for contractual liability; (b) relates to matters arising out of the employment relationship between Principal Finney and Defendants; (c) relates to wages, hours,

conditions, or other terms of employment; and (d) allege violations of the constitution or statutes of the United States. Nor does R.C. 2744.02(A) shield the Board from liability as the R.C. 2744.02(B)(4) immunity exception applies since the injuries and damages to Principal Finney for caused by the negligence (at least) of the Board's employees and occurred within or on the grounds of, and is due to physical defects (*e.g.,* security devices and cameras) within or on the grounds of, buildings that are used in connection with the performance of a governmental function and the R.C. 2744.03(A)(1)-(3) and (5) immunity defenses are inapplicable as no Board employee was engaged in the performance of a judicial, quasi-judicial, prosecutorial, legislative, or quasi-legislative function; no conduct of any Board employee involved, other than negligent conduct, that gave rise to the claim of liability was required by law or authorized by law, or if the conduct of the employee involved that gave rise to the claim of liability was necessary or essential to the exercise of powers of the Board or the Board's employees; no action or failure to act by any Board employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the Board employee; and the injuries and damages to Principal Finney resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources with malicious purpose, in bad faith, or in a wanton or reckless manner. Nor does R.C. 2744.03(A)(6) shield the Board employees from liability as their acts and omissions were manifestly outside the scope of their employment or official responsibilities and/or were taken with malicious purpose, in bad faith, or in a wanton or reckless manner. In addition, civil liability is expressly imposed upon by the

Board and the Board employees by the Ohio Revised Code (R.C. 2744.02(B)(5) and R.C. 2744.03(A)(6)(c)).

392.  A clear public policy of progressive discipline exists when disciplining school employees and this clear public policy is manifested in state or federal constitutions, statutes or administrative regulations, or in common law.

393.  A clear public policy exists to not suspend — with or without pay — school employees without first providing such school employees with notice and an opportunity to be heard and this clear public policy is manifested in state or federal constitutions, statutes, or administrative regulations, or in common law.

394.  Prior to November 18, 2019, Principal Finney was never disciplined by Defendants.

395.  On November 18, 2019, Defendants suspended Principal Finney without pay and without either (a) applying progressive discipline or (b) providing Finney with notice and an opportunity to be heard as to Defendants' allegations in support of that action.

396.  On or about December 4, 2019, Defendants terminated Principal Finney's health care coverage without either (a) applying progressive discipline or (b) providing Principal Finney with notice and opportunity to be heard as to Defendants' allegations in support of that action.

397.  Suspending school employees without pay under circumstances like those involved in Principal Finney's suspension without pay will jeopardize the public policies of (a) applying progressive discipline and (b) providing notice and an opportunity to be heard prior to taking such action.

398.  Since providing Principal Finney with notice and an opportunity to be heard will let the truth get in the way of the false story Defendants have been telling since September 19,

2019, Defendants' premature action to suspend Finney without pay was motivated by Defendants' desire avoid the public policies of (a) applying progressive discipline and (b) providing notice and opportunity to be heard.

399.   Defendants lack an overriding legitimate business justification for refusing to either (a) apply progressive discipline or (b) provide Principal Finney with notice and an opportunity to be heard prior to Defendants suspending Principal Finney without pay.

400.   The actions of Defendants were the cause in fact and proximate cause of Principal Finney's injuries.

401.   **WHEREFORE**, Principal Finney requests that this Honorable Court award Principal Finney civil damages, compensatory damages, appropriate equitable relief, punitive damages, attorney fees, expenses, and costs **in excess of One Million Dollars** and any other relief as this Honorable Court deems just and proper against Defendants, joint and severally.

### COUNT TEN (STATE LAW CLAIM):
### WRONGFUL TERMINATION/DISCHARGE

402.   Principal Finney reincorporates by reference the allegations set forth above and below as if fully rewritten herein.

403.   R.C. Chapter 2744 does not apply, and shall not construe to apply, to the instant cause of action as the instant cause of action (a) seeks to recover damages from the Board and its employees for contractual liability; (b) relates to matters arising out of the employment relationship between Principal Finney and Defendants; (c) relates to wages, hours, conditions, or other terms of employment; and (d) allege violations of the constitution or statutes of the United States. Nor does R.C. 2744.02(A) shield the Board from liability as the R.C. 2744.02(B)(4) immunity exception applies since the injuries and damages to

Principal Finney for caused by the negligence (at least) of the Board's employees and occurred within or on the grounds of, and is due to physical defects (*e.g.,* security devices and cameras) within or on the grounds of, buildings that are used in connection with the performance of a governmental function and the R.C. 2744.03(A)(1)-(3) and (5) immunity defenses are inapplicable as no Board employee was engaged in the performance of a judicial, quasi-judicial, prosecutorial, legislative, or quasi-legislative function; no conduct of any Board employee involved, other than negligent conduct, that gave rise to the claim of liability was required by law or authorized by law, or if the conduct of the employee involved that gave rise to the claim of liability was necessary or essential to the exercise of powers of the Board or the Board's employees; no action or failure to act by any Board employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the Board employee; and the injuries and damages to Principal Finney resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources with malicious purpose, in bad faith, or in a wanton or reckless manner. Nor does R.C. 2744.03(A)(6) shield the Board employees from liability as their acts and omissions were manifestly outside the scope of their employment or official responsibilities and/or were taken with malicious purpose, in bad faith, or in a wanton or reckless manner. In addition, civil liability is expressly imposed upon by the Board and the Board employees by the Ohio Revised Code (R.C. 2744.02(B)(5) and R.C. 2744.03(A)(6)(c)).

404. A clear public policy of progressive discipline exists when disciplining school employees and this clear public policy is manifested in state or federal constitutions, statutes, or administrative regulations, or in common law.

405. Prior to November 13, 2019, Principal Finney was never disciplined by Defendants.

406. On November 13, 2019, Defendants declared Defendants' consideration to terminate the employment contract of Principal Finney without either (a) applying progressive discipline or (b) providing Principal Finney with notice and opportunity to be heard as to the Board's allegations in that notice.

407. On November 18, 2019, Defendants declared Defendants' intention to terminate the employment contract of Principal Finney without either (a) applying progressive discipline or (b) providing Principal Finney with notice and an opportunity to be heard as to Defendants' allegations in support of that action.

408. On or about December 4, 2019, Defendants terminated Principal Finney's health care coverage due without either (a) applying progressive discipline or (b) providing Principal Finney with notice and an opportunity to be heard as to Defendants' allegations in support of that notice.

409. On July 24, 2023, Defendants terminated the employment contract of Principal Finney without either (a) applying progressive discipline or (b) providing Principal Finney with notice and an opportunity to be heard as to Defendants' allegations in support of that action.

410. Terminating/discharging school employees under circumstances like those involved in Principal Finney's termination/discharge process will jeopardize the public policy of (a) applying progressive discipline and (b) providing notice and an opportunity to be heard prior to taking action to terminate/discharge school employees.

411. Since providing Principal Finney with notice and an opportunity to be heard will let the truth get in the way of the false story Defendants has been telling since September 19, 2019, the Board's premature action to initiate the termination/discharge process of Principal Finney was motivated by Defendants' desire avoid the public policies of (a) applying progressive discipline and (b) providing notice and opportunity to be heard.

412. Defendants lack an overriding legitimate business justification for refusing to (a) apply progressive discipline and (b) provide Finney with notice and an opportunity to be heard prior to taking Defendants' termination/discharge actions.

413. Principal Finney suffered damages including loss of pay, benefits, and employment.

414. The actions of Defendants were the cause in fact and proximate cause of Principal Finney's damages.

415. **WHEREFORE**, Principal Finney requests that this Honorable Court award Principal Finney civil damages, compensatory damages, appropriate equitable relief, punitive damages, attorney fees, expenses, and costs **in excess of One Million Dollars** and any other relief as this Honorable Court deems just and proper against Defendants, joint and severally.

### COUNT ELEVEN (STATE LAW CLAIM): ABUSE OF PROCESS

416. Principal Finney reincorporates by reference the allegations set forth above and below as if fully rewritten herein.

417. R.C. Chapter 2744 does not apply, and shall not construe to apply, to the instant cause of action as the instant cause of action (a) seeks to recover damages from the Board and its employees for contractual liability; (b) relates to matters arising out of the employment relationship between Principal Finney and Defendants; (c) relates to wages, hours,

conditions, or other terms of employment; and (d) allege violations of the constitution or statutes of the United States. Nor does R.C. 2744.02(A) shield the Board from liability as the R.C. 2744.02(B)(4) immunity exception applies since the injuries and damages to Principal Finney for caused by the negligence (at least) of the Board's employees and occurred within or on the grounds of, and is due to physical defects (*e.g.,* security devices and cameras) within or on the grounds of, buildings that are used in connection with the performance of a governmental function and the R.C. 2744.03(A)(1)-(3) and (5) immunity defenses are inapplicable as no Board employee was engaged in the performance of a judicial, quasi-judicial, prosecutorial, legislative, or quasi-legislative function; no conduct of any Board employee involved, other than negligent conduct, that gave rise to the claim of liability was required by law or authorized by law, or if the conduct of the employee involved that gave rise to the claim of liability was necessary or essential to the exercise of powers of the Board or the Board's employees; no action or failure to act by any Board employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the Board employee; and the injuries and damages to Principal Finney resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources with malicious purpose, in bad faith, or in a wanton or reckless manner. Nor does R.C. 2744.03(A)(6) shield the Board employees from liability as their acts and omissions were manifestly outside the scope of their employment or official responsibilities and/or were taken with malicious purpose, in bad faith, or in a wanton or reckless manner. In addition, civil liability is expressly imposed upon by the

Board and the Board employees by the Ohio Revised Code (R.C. 2744.02(B)(5) and R.C. 2744.03(A)(6)(c)).

418. On November 18, 2019, the Board passed Board Resolution No. 19-168 and set in motion the suspension without pay process set forth in R.C. 3319.16 with respect to Principal Finney.

419. The R.C. 3319.16 proceedings were perverted in an attempt to accomplish an ulterior purpose for which R.C. 3319.16 was not designed.

420. Principal Finney suffered damages including loss of pay, benefits, and employment.

421. The actions of Defendants were the cause in fact and proximate cause of Principal Finney's damages.

422. **WHEREFORE**, Principal Finney requests that this Honorable Court award Principal Finney civil damages, compensatory damages, appropriate equitable relief, punitive damages, attorney fees, expenses, and costs **in excess of One Million Dollars** and any other relief as this Honorable Court deems just and proper against Defendants, joint and severally.

### COUNT TWELVE (STATE LAW CLAIM): OPEN MEETINGS ACT VIOLATION

423. Principal Finney reincorporates by reference the allegations set forth above and below as if fully rewritten herein.

424. From September 19, 2019, to the present Defendants' issuance of notices, including, but not limited to the notices for the September 23, 2019; October 7, 2019; October 21, 2019; November 4, 2019; November 18, 2019; November 25, 2019; December 9, 2019; and December 23, 2019 board meetings violated the notice provisions of R.C. 121.22, R.C. 3313.16, and applicable laws.

425. Defendants violated the deliberations provisions of R.C. 121.22 and applicable laws.

426. From September 19, 2019, to the present Defendants' entering into executive session, including, but not limited to entering into executive session during the September 23, 2019; October 7, 2019; October 21, 2019; November 4, 2019; November 18, 2019; November 25, 2019; December 9, 2019; and December 23, 2019 board meetings violated the executive session provisions of R.C. 121.22 and applicable laws.

427. Based on the ordinary application of statutory law and case law as it existed at the time of the violation set forth in this instant complaint, no well-informed public body would reasonably believe that the public body was not violating or threatening to violate R.C. 121.22 and applicable laws.

428. No well-informed public body would reasonably believe that Defendants' conduct would serve the public policy that underlies R.C. 121.22 and applicable laws as permitting Defendants' conduct.

429. Principal Finney has been irreparably harmed and prejudiced by Defendants' violation of R.C. 121.22 and applicable laws.

430. Defendants' actions were the cause in fact and proximate cause of Principal Finney's injuries.

431. **WHEREFORE**, Principal Finney requests that this Honorable Court award Principal Finney, injunctive relief, civil damages, compensatory damages, appropriate equitable relief, punitive damages, attorney fees, expenses, and costs **in excess of One Million Dollars,** and any other relief as this Honorable Court deems just and proper against Defendants, joint and severally.

## COUNT THIRTEEN (STATE LAW CLAIM):
## OHIO CONSTITUTION, ARTICLE I, SECTION 5

432.  Principal Finney reincorporates by reference the allegations set forth above and below as if fully rewritten herein.

433.  Principal Finney brings this claim against Defendants pursuant to Article One, Section Five of the Ohio Constitution, which provides that "[t]he right of trial by jury shall be inviolate, except that, in civil cases, laws may be passed to authorize the rendering of a verdict by the concurrence of not less than three-fourths of the jury."

434.  Breach of employment contract actions are civil cases.

435.  Principal Finney asserts a breach of employment contract claim against Defendants.

436.  Breach of employment contract claims were remediable in courts of law before the September 3, 1912 adoption of the Ohio Constitution, Article I, Section 5.

437.  R.C. 3319.16 was enacted after the September 3, 1912 adoption of the Ohio Constitution, Article I, Section 5.

438.  R.C. 3319.16 violates Principal Finney's right to a jury trial under the Ohio Constitution, Article I, Section 5 on its face and as applied to Principal Finney.

439.  Principal Finney has not waived his right to a jury trial.

440.  The denial of the constitutional right to a jury is a cause in fact and a proximate cause of injury to Principal Finney.

441.  **WHEREFORE**, Principal Finney requests that this Honorable Court award Principal Finney civil damages, compensatory damages, appropriate equitable relief, punitive damages, attorney fees, expenses, and costs **in excess of One Million Dollars** and any other relief as this Honorable Court deems just and proper against Defendants, joint and severally.

**COUNT FOURTEEN (STATE LAW CLAIM):**
**WRONGFUL DISCLOSURE OF CONFIDENTIAL AND PERSONAL INFORMATION**

442.   Principal Finney reincorporates by reference the allegations set forth above and below as if fully rewritten herein.

443.   R.C. Chapter 2744 does not apply, and shall not construe to apply, to the instant cause of action as the instant cause of action (a) seeks to recover damages from the Board and its employees for contractual liability; (b) relates to matters arising out of the employment relationship between Principal Finney and Defendants; (c) relates to wages, hours, conditions, or other terms of employment; and (d) allege violations of the constitution or statutes of the United States. Nor does R.C. 2744.02(A) shield the Board from liability as the R.C. 2744.02(B)(4) immunity exception applies since the injuries and damages to Principal Finney for caused by the negligence (at least) of the Board's employees and occurred within or on the grounds of, and is due to physical defects (*e.g.,* security devices and cameras) within or on the grounds of, buildings that are used in connection with the performance of a governmental function and the R.C. 2744.03(A)(1)-(3) and (5) immunity defenses are inapplicable as no Board employee was engaged in the performance of a judicial, quasi-judicial, prosecutorial, legislative, or quasi-legislative function; no conduct of any Board employee involved, other than negligent conduct, that gave rise to the claim of liability was required by law or authorized by law, or if the conduct of the employee involved that gave rise to the claim of liability was necessary or essential to the exercise of powers of the Board or the Board's employees; no action or failure to act by any Board employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the Board employee; and the injuries

68

and damages to Principal Finney resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources with malicious purpose, in bad faith, or in a wanton or reckless manner. Nor does R.C. 2744.03(A)(6) shield the Board employees from liability as their acts and omissions were manifestly outside the scope of their employment or official responsibilities and/or were taken with malicious purpose, in bad faith, or in a wanton or reckless manner. In addition, civil liability is expressly imposed upon by the Board and the Board employees by the Ohio Revised Code (R.C. 2744.02(B)(5) and R.C. 2744.03(A)(6)(c)).

444. Defendants violated R.C. 149.40 by creating records regarding Principal Finney that were not necessary for the adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of Defendants and for the protection of the legal and financial rights of the state and persons directly affected by Defendants' activities.

445. Defendants violated R.C. 149.43 by disclosing non-public records regarding Principal Finney.

446. Defendants violated R.C. 2151.423 by disclosing the information that the Summit County Children Services provided Defendants regarding Principal Finney.

447. Acting under color of state law, Defendants maintained personal information regarding to Principal Finney pursuant to R.C. Chapter 1347, Board Policy 8320.01, and applicable laws.

448. Defendants violated R.C. 1347.10(A)(1) by intentionally maintaining personal information regarding Principal Finney that Defendants knew, or had reason to know, was inaccurate, irrelevant, no longer timely, or incomplete and may result in harm.

449. Defendants violated R.C. 1347.10(A)(2) by intentionally using or disclosing personal information regarding Principal Finney in a manner prohibited by law.

450. Defendants violated R.C. 1347.10(A)(3) by intentionally supplying personal information regarding Principal Finney for storage in, or using or disclosing personal information regarding Principal Finney maintained in, a personal information system that Defendants knew, or had reason to know, was false.

451. Defendants violated R.C. 1347.05(H) by collecting, maintaining, and using personal information regarding Principal Finney that was not necessary and relevant to the functions that Defendants were required or authorized to perform by statute, ordinance, code, or rule, and Defendants failed to eliminate personal information regarding Principal Finney from the system when personal information regarding Principal Finney was no longer necessary and relevant to those functions.

452. Defendants violated Board Policy 8320.01 by collecting, maintaining, and using personal information regarding Principal Finney that was not necessary and relevant to Defendants carrying out the effective operation of the District.

453. Defendants violated Board Policy 8320.01 by not taking reasonable precautions to protect personal information regarding Principal Finney maintained in the information system from unauthorized modification, destruction, use, or disclosure and Defendants failed to eliminate personal information regarding Principal Finney when personal information

regarding Principal Finney was no longer necessary and relevant to the District carrying out District functions.

454.   Defendants violated Board Policy 8310 by improperly maintaining and disclosing the personal information regarding Principal Finney.

455.   Defendants violated Board Policy 8320 by improperly maintaining and disclosing the personal information regarding Principal Finney.

456.   Defendants violated Administrative Guidelines 8310A by improperly maintaining and disclosing the personal information regarding Principal Finney.

457.   Defendants violated Administrative Guidelines 8310B by improperly maintaining and disclosing the personal information regarding Principal Finney.

458.   Defendants violated Administrative Guidelines 8310D by improperly maintaining and disclosing the personal information regarding Principal Finney.

459.   Principal Finney was harmed by the use of personal information regarding Principal Finney that is maintained in Defendants' personal information system.

460.   The actions of Defendants were the cause in fact and proximate cause of Finney's injuries.

461.   **WHEREFORE**, Principal Finney requests that this Honorable Court award Principal Finney civil damages, compensatory damages, appropriate equitable relief, punitive damages, attorney fees, expenses, and costs **in excess of One Million Dollars** and any other relief as this Honorable Court deems just and proper against Defendants, joint and severally.

### COUNT FIFTEEN (STATE LAW CLAIM):
### PUBLIC DISCLOSURE OF PRIVATE FACTS

462.   Principal Finney reincorporates by reference the allegations set forth above and below as if fully rewritten herein.

463.    R.C. Chapter 2744 does not apply, and shall not construe to apply, to the instant cause of action as the instant cause of action (a) seeks to recover damages from the Board and its employees for contractual liability; (b) relates to matters arising out of the employment relationship between Principal Finney and Defendants; (c) relates to wages, hours, conditions, or other terms of employment; and (d) allege violations of the constitution or statutes of the United States. Nor does R.C. 2744.02(A) shield the Board from liability as the R.C. 2744.02(B)(4) immunity exception applies since the injuries and damages to Principal Finney for caused by the negligence (at least) of the Board's employees and occurred within or on the grounds of, and is due to physical defects (*e.g.,* security devices and cameras) within or on the grounds of, buildings that are used in connection with the performance of a governmental function and the R.C. 2744.03(A)(1)-(3) and (5) immunity defenses are inapplicable as no Board employee was engaged in the performance of a judicial, quasi-judicial, prosecutorial, legislative, or quasi-legislative function; no conduct of any Board employee involved, other than negligent conduct, that gave rise to the claim of liability was required by law or authorized by law, or if the conduct of the employee involved that gave rise to the claim of liability was necessary or essential to the exercise of powers of the Board or the Board's employees; no action or failure to act by any Board employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the Board employee; and the injuries and damages to Principal Finney resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources with malicious purpose, in bad faith, or in a wanton or

reckless manner. Nor does R.C. 2744.03(A)(6) shield the Board employees from liability as their acts and omissions were manifestly outside the scope of their employment or official responsibilities and/or were taken with malicious purpose, in bad faith, or in a wanton or reckless manner. In addition, civil liability is expressly imposed upon by the Board and the Board employees by the Ohio Revised Code (R.C. 2744.02(B)(5) and R.C. 2744.03(A)(6)(c)).

464. Defendants publicly disclosed private facts regarding Principal Finney.

465. The disclosure of facts by Defendants concerned the private life of Principal Finney.

466. The matters disclosed by Defendants are highly offensive and objectionable to a reasonable person of ordinary sensibilities.

467. The public disclosure by Defendants was intentional.

468. The matters publicized by Defendants are not of legitimate concern to the public.

469. Principal Finney was damaged by Defendants' disclosure of facts.

470. The actions of Defendants were the cause in fact and proximate cause of Principal Finney's damages.

471. **WHEREFORE**, Principal Finney requests that this Honorable Court award Principal Finney civil damages, compensatory damages, appropriate equitable relief, punitive damages, attorney fees, expenses, and costs **in excess of One Million Dollars** and any other relief as this Honorable Court deems just and proper against Defendants, joint and severally.

## COUNT SIXTEEN (STATE LAW CLAIM):
## FALSE LIGHT

472. Principal Finney reincorporates by reference the allegations set forth above and below as if fully rewritten herein.

473.     R.C. Chapter 2744 does not apply, and shall not construe to apply, to the instant cause of action as the instant cause of action (a) seeks to recover damages from the Board and its employees for contractual liability; (b) relates to matters arising out of the employment relationship between Principal Finney and Defendants; (c) relates to wages, hours, conditions, or other terms of employment; and (d) allege violations of the constitution or statutes of the United States. Nor does R.C. 2744.02(A) shield the Board from liability as the R.C. 2744.02(B)(4) immunity exception applies since the injuries and damages to Principal Finney for caused by the negligence (at least) of the Board's employees and occurred within or on the grounds of, and is due to physical defects (*e.g.,* security devices and cameras) within or on the grounds of, buildings that are used in connection with the performance of a governmental function and the R.C. 2744.03(A)(1)-(3) and (5) immunity defenses are inapplicable as no Board employee was engaged in the performance of a judicial, quasi-judicial, prosecutorial, legislative, or quasi-legislative function; no conduct of any Board employee involved, other than negligent conduct, that gave rise to the claim of liability was required by law or authorized by law, or if the conduct of the employee involved that gave rise to the claim of liability was necessary or essential to the exercise of powers of the Board or the Board's employees; no action or failure to act by any Board employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the Board employee; and the injuries and damages to Principal Finney resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources with malicious purpose, in bad faith, or in a wanton or

reckless manner. Nor does R.C. 2744.03(A)(6) shield the Board employees from liability as their acts and omissions were manifestly outside the scope of their employment or official responsibilities and/or were taken with malicious purpose, in bad faith, or in a wanton or reckless manner. In addition, civil liability is expressly imposed upon by the Board and the Board employees by the Ohio Revised Code (R.C. 2744.02(B)(5) and R.C. 2744.03(A)(6)(c)).

474. Defendants gave publicity to matters concerning Principal Finney that placed Principal Finney before the public in a false light.

475. Defendants invaded Principal Finney's privacy.

476. The false light in which Principal Finney was placed is highly offensive to a reasonable person.

477. Defendants had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which Principal Finney would be placed.

478. Principal Finney was damaged by the false light.

479. The actions of Defendants were the cause in fact and proximate cause of Principal Finney's damages.

480. **WHEREFORE**, Principal Finney requests that this Honorable Court award Principal Finney civil damages, compensatory damages, appropriate equitable relief, punitive damages, attorney fees, expenses, and costs **in excess of One Million Dollars** and any other relief as this Honorable Court deems just and proper against Defendants, joint and severally.

## COUNT SEVENTEEN (STATE LAW CLAIM):
## DEFAMATION

481.  Principal Finney reincorporates by reference the allegations set forth above and below as if fully rewritten herein.

482.  R.C. Chapter 2744 does not apply, and shall not construe to apply, to the instant cause of action as the instant cause of action (a) seeks to recover damages from the Board and its employees for contractual liability; (b) relates to matters arising out of the employment relationship between Principal Finney and Defendants; (c) relates to wages, hours, conditions, or other terms of employment; and (d) allege violations of the constitution or statutes of the United States. Nor does R.C. 2744.02(A) shield the Board from liability as the R.C. 2744.02(B)(4) immunity exception applies since the injuries and damages to Principal Finney for caused by the negligence (at least) of the Board's employees and occurred within or on the grounds of, and is due to physical defects (*e.g.,* security devices and cameras) within or on the grounds of, buildings that are used in connection with the performance of a governmental function and the R.C. 2744.03(A)(1)-(3) and (5) immunity defenses are inapplicable as no Board employee was engaged in the performance of a judicial, quasi-judicial, prosecutorial, legislative, or quasi-legislative function; no conduct of any Board employee involved, other than negligent conduct, that gave rise to the claim of liability was required by law or authorized by law, or if the conduct of the employee involved that gave rise to the claim of liability was necessary or essential to the exercise of powers of the Board or the Board's employees; no action or failure to act by any Board employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the Board employee; and the injuries

76

and damages to Principal Finney resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources with malicious purpose, in bad faith, or in a wanton or reckless manner. Nor does R.C. 2744.03(A)(6) shield the Board employees from liability as their acts and omissions were manifestly outside the scope of their employment or official responsibilities and/or were taken with malicious purpose, in bad faith, or in a wanton or reckless manner. In addition, civil liability is expressly imposed upon by the Board and the Board employees by the Ohio Revised Code (R.C. 2744.02(B)(5) and R.C. 2744.03(A)(6)(c)).

483.    Defendants made false and defamatory statements in writing — *i.e.*, libel.

484.    Defendants made false and defamatory statements verbally — *i.e.*, slander.

485.    Defendants' false and defamatory statements were about Principal Finney.

486.    The false and defamatory statements made by Defendants about Principal Finney were published without privilege to third parties.

487.    As Principal Finney is neither a public official nor public figure, Defendants' false and defamatory statements about Principal Finney were published to third parties with fault of at least negligence.

488.    While Principal Finney is neither a public official nor public figure, Defendants' false and defamatory statements about Principal Finney were, nonetheless, published without privilege to third parties with actual malice as Defendants did so with either:

a.      Knowledge that statements were false, or

77

b.   Reckless disregard of whether the statements were false or not since Defendants had a high degree of awareness of the statements' probable falsity or, in fact, entertained serious doubts as to the truth of Defendants' publications.

489.   The false and defamatory statements made by Defendants about Principal Finney are defamatory per se as, on its face, the matters reflect upon Principal Finney's character in a manner that either (a) caused Principal Finney to be ridiculed, hated, or held in contempt or (b) injured Principal Finney in Principal Finney's trade or profession.

490.   The false and defamatory statements made by Defendants about Principal Finney are defamatory *per quod* as the material is defamatory through interpretation or innuendo.

491.   The false and defamatory statements made by Defendants about Principal Finney caused special damages to Principal Finney.

492.   The actions of Defendants were the cause in fact and proximate cause of Principal Finney's injuries.

493.   **WHEREFORE**, Principal Finney requests that this Honorable Court award Principal Finney civil damages, compensatory damages, appropriate equitable relief, punitive damages, attorney fees, expenses, and costs **in excess of One Million Dollars** and any other relief as this Honorable Court deems just and proper against Defendants, joint and severally.

## COUNT EIGHTEEN (STATE LAW CLAIM): INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

494.   Principal Finney reincorporates by reference the allegations set forth above and below as if fully rewritten herein.

495.   R.C. Chapter 2744 does not apply, and shall not construe to apply, to the instant cause of action as the instant cause of action (a) seeks to recover damages from the Board and its

employees for contractual liability; (b) relates to matters arising out of the employment relationship between Principal Finney and Defendants; (c) relates to wages, hours, conditions, or other terms of employment; and (d) allege violations of the constitution or statutes of the United States. Nor does R.C. 2744.02(A) shield the Board from liability as the R.C. 2744.02(B)(4) immunity exception applies since the injuries and damages to Principal Finney for caused by the negligence (at least) of the Board's employees and occurred within or on the grounds of, and is due to physical defects (*e.g.,* security devices and cameras) within or on the grounds of, buildings that are used in connection with the performance of a governmental function and the R.C. 2744.03(A)(1)-(3) and (5) immunity defenses are inapplicable as no Board employee was engaged in the performance of a judicial, quasi-judicial, prosecutorial, legislative, or quasi-legislative function; no conduct of any Board employee involved, other than negligent conduct, that gave rise to the claim of liability was required by law or authorized by law, or if the conduct of the employee involved that gave rise to the claim of liability was necessary or essential to the exercise of powers of the Board or the Board's employees; no action or failure to act by any Board employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the Board employee; and the injuries and damages to Principal Finney resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources with malicious purpose, in bad faith, or in a wanton or reckless manner. Nor does R.C. 2744.03(A)(6) shield the Board employees from liability as their acts and omissions were manifestly outside the scope of their employment or

official responsibilities and/or were taken with malicious purpose, in bad faith, or in a wanton or reckless manner. In addition, civil liability is expressly imposed upon by the Board and the Board employees by the Ohio Revised Code (R.C. 2744.02(B)(5) and R.C. 2744.03(A)(6)(c)).

496.  Defendants either (a) intended to cause emotional distress or (b) knew or should have known that actions taken by Defendants would result in serious emotional distress to Principal Finney.

497.  Defendants' conduct was (a) so extreme and outrageous as to beyond all possible bounds of decency and (b) such that it can be considered as utterly intolerable in a civilized community.

498.  The mental anguish suffered by Principal Finney is serious and of a nature that no reasonable person could be expected to endure it.

499.  The actions of Defendants were the cause in fact and proximate cause of Principal Finney's injuries.

500.  **WHEREFORE**, Principal Finney requests that this Honorable Court award Principal Finney civil damages, compensatory damages, appropriate equitable relief, punitive damages, attorney fees, expenses, and costs **in excess of One Million Dollars** and any other relief as this Honorable Court deems just and proper against Defendants, joint and severally.

### COUNT NINETEEN (STATE LAW CLAIM): GENERAL NEGLIGENCE

501.  Principal Finney reincorporates by reference the allegations set forth above and below as if fully rewritten herein.

502.   R.C. Chapter 2744 does not apply, and shall not construe to apply, to the instant cause of action as the instant cause of action (a) seeks to recover damages from the Board and its employees for contractual liability; (b) relates to matters arising out of the employment relationship between Principal Finney and Defendants; (c) relates to wages, hours, conditions, or other terms of employment; and (d) allege violations of the constitution or statutes of the United States. Nor does R.C. 2744.02(A) shield the Board from liability as the R.C. 2744.02(B)(4) immunity exception applies since the injuries and damages to Principal Finney for caused by the negligence (at least) of the Board's employees and occurred within or on the grounds of, and is due to physical defects (*e.g.,* security devices and cameras) within or on the grounds of, buildings that are used in connection with the performance of a governmental function and the R.C. 2744.03(A)(1)-(3) and (5) immunity defenses are inapplicable as no Board employee was engaged in the performance of a judicial, quasi-judicial, prosecutorial, legislative, or quasi-legislative function; no conduct of any Board employee involved, other than negligent conduct, that gave rise to the claim of liability was required by law or authorized by law, or if the conduct of the employee involved that gave rise to the claim of liability was necessary or essential to the exercise of powers of the Board or the Board's employees; no action or failure to act by any Board employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the Board employee; and the injuries and damages to Principal Finney resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources with malicious purpose, in bad faith, or in a wanton or

reckless manner. Nor does R.C. 2744.03(A)(6) shield the Board employees from liability as their acts and omissions were manifestly outside the scope of their employment or official responsibilities and/or were taken with malicious purpose, in bad faith, or in a wanton or reckless manner. In addition, civil liability is expressly imposed upon by the Board and the Board employees by the Ohio Revised Code (R.C. 2744.02(B)(5) and R.C. 2744.03(A)(6)(c)).

503.  At all relevant times, Defendants owed duties to Principal Finney.

504.  Defendants breached their duties owed to Principal Finne.

505.  Principal Finney was injured by Defendants' breaches.

506.  The actions of Defendants were the cause in fact and proximate cause of Principal Finney's injuries.

507.  **WHEREFORE**, Principal Finney requests that this Honorable Court award Principal Finney civil damages, compensatory damages, appropriate equitable relief, punitive damages, attorney fees, expenses, and costs **in excess of One Million Dollars** and any other relief as this Honorable Court deems just and proper against Defendants, joint and severally.

## PRAYER FOR RELIEF

508.  **WHEREFORE**, Principal Finney requests that this Honorable Court award Principal Finney injunctive relief, civil damages, compensatory damages, appropriate equitable relief, punitive damages, attorney fees, expenses, and costs **in excess of One Million Dollars,** and any other relief as this Honorable Court deems just and proper against Defendants, joint and severally.

## JURY DEMAND

509.    Principal Finney hereby demands a trial by jury on all issues of the within action.

<div style="margin-left:40%">

Respectfully submitted,

*/s/ Matthew John Markling*
Matthew John Markling (0068095)
McGown & Markling Co., L.P.A.
1894 North Cleveland-Massillon Road
Akron, Ohio 44333
Telephone: 1.330.670.0005
Facsimile: 1.330.670.0002
Email: mmarkling@mcgownmarkling.com

*Attorney for Plaintiff Vyrone A. Finney*

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing will be sent electronically and via regular mail to the following on October 13, 2023:

Alejandro V. Cortes
Hailee Kepchar
Roetzel & Andress, LPA
1375 East Ninth Street
10th Floor
One Cleveland Center
Cleveland, Ohio 44114
hkepchar@ralaw.com
acortes@ralaw.com

Ohio Attorney General David Yost
Constitutional Offices Section
Section Chief Julie M. Pfeiffer
30 East Broad Street
14th Floor
Columbus, Ohio 43215
julie.pfeiffer@OhioAGO.gov

<div style="margin-left:40%">

*/s/ Matthew John Markling*
Matthew John Markling (0068095)

</div>